# McKEE ET AL. *v.* GRATZ.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 61. Argued October 13, 16, 1922.—Decided November 13, 1922.

1. The Missouri statute declaring that title to all birds, game and fish shall be in the State, Rev. Stats. Mo. 1909, § 6508; 1919, § 5581; speaks only in aid of the State's power of regulation, leaving the land owner's property in these things otherwise unaffected. P. 135.

2. Unlike wild birds and fish, live mussels, which have practically a fixed habitat in the bottom of a stream and little ability to move, are in the possession of the owner of the land, as are, even more obviously, the shells taken from such mussels and piled upon the bank. P. 135.

3. Such possession is enough to warrant recovery of substantial damages for conversion by a trespasser. P. 136.

4. But a license to take such mussels from uninclosed and uninhabited places may be implied from custom, the more readily where statutory prohibitions are limited to enclosed and cultivated land and private ponds, as by Rev. Stats. Mo. 1919, § 5662, 3654. P. 136.

5. The existence of such custom and license, and whether it extends beyond occasional uses to systematic extraction of mussels in large quantities for commercial purpose, *held,* for the jury. P. 136.

6. Live mussels in a stream are not part of the realty within the meaning of Rev. Stats. Mo. 1909, § 5448; 1919, § 4242, allowing triple damages in certain cases for the digging up and carrying away

of stones, mineral, etc., " or other substance or material being part of the realty." P. 137.

7. Damages recoverable by the land owner for mussels taken by trespass but in a belief of right due to a mistaken interpretation of the state game laws, are limited to the value at the time of conversion. P. 137.

270 Fed. 713, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals, reversing a judgment for the present petitioners, in an action for damages brought by the respondent Gratz, to recover the manufactured value of over 300 tons of mussel shells which were dug from a stream-bed on his land (then of his assignor) and converted into buttons; also for triple damages, under a Missouri statute.

*Mr. Lon O. Hocker,* with whom *Mr. William Hoffman, Mr. Arthur Hoffman, Mr. Frank H. Sullivan* and *Mr. Ralph T. Finley* were on the briefs, for petitioners.

The mollusks taken from the Little River were shell fish controlled by the same rules of law as other fishes. *Martin* v. *Waddell,* 16 Pet. 414; 11 R. C. L., p. 1015; *Moulton* v. *Libbey,* 37 Me. 472; *Caswell* v. *Johnson,* 58 Me. 164; *Weston* v. *Sampson,* 8 Cush. 764; First Opinion of Court of Appeals, 258 Fed. 335; Second Id., 270 Fed. 713.

For plaintiff to recover in this action, his assignors must have had prior possession of or plenary title to the mollusks or shells taken therefrom. *Northern Pacific R. R. Co.* v. *Lewis,* 162 U. S. 373; *United States* v. *Loughrey,* 172 U. S. 213.

The plaintiff's assignors could not maintain trespass against defendants merely because mollusks were taken by others from their premises and the shells thereof sold and shipped to defendants. *Brown* v. *Peaslee,* 69 N. H. 458; *Neild* v. *Burton,* 49 Mich. 53; *Talmadge* v. *Scudder,* 2 Wright (Pa.) 517; *Catlin* v. *Warren,* 16 Bradw. (Ill. App.) 418.

The land owner has no title to the wild animals in his forest, nor to the fishes in his stream. The ownership is in the sovereign. 19 Cyc. 988; *McCready* v. *Virginia,* 94 U. S. 394; 11 R. C. L., p. 105; 3 Minor Institutes, p. 12; Farnham on Waters, § 1426; *Parker* v. *People,* 111 Ill. 603; *Peters* v. *State,* 96 Tenn. 682; *State* v. *Thereault,* 70 Vt. 617.

The land owner takes no title to fishes or game reduced to possession by a trespass on his premises. *Geer* v. *Connecticut,* 161 U. S. 523; *Beach* v. *Morgan,* 67 N. H. 529; 11 R. C. L., p. 1039.

Both by the civil and common law, in the absence of inhibitory legislation, one who reduces game or fishes *ferae naturae* to possession, acquires title, though he so reduce them on the lands of another. *Geer* v. *Connecticut,* 161 U. S. 523–526.

It is within the power of the State to take unto itself whatever right the land owner might otherwise assert at common law to game or fishes reduced to possession by a trespass on his premises. *Geer* v. *Connecticut, supra; State* v. *Weber,* 205 Mo. 36; *State* v. *Heger,* 194 Mo. 707; *State* v. *Warner,* 197 Mo. 650.

Missouri has regulated the taking of fish and game for many years. *State* v. *Warner, supra.*

Under the legislation in that State, title to game and fishes taken in trespass vests, not in the proprietor of the premises, but in the State. Mo. Laws 1905, p. 139, reënacted as Laws 1909, p. 159, and now found in Rev. Stats. Mo. 1919, § 5581.

Title to the beds of public navigable streams in Missouri is in the sovereign. *Benson* v. *Morrow,* 61 Mo. 345; *State* v. *Longfellow,* 169 Mo. 109; *McKinney* v. *Northcutt,* 114 Mo. App. 146.

Title to smaller streams (such as the Little River) is in the riparian proprietor subject to the public right of user. Mo. Constitution 1875, Art. I, § 1; *McKinney* v. *North-*

45646°—23——9

*cutt,* 114 Mo. App. 146; *Weller* v. *Mining Co.,* 176 Mo. App. 243; *Stuart* v. *Clark,* 2 Swan (Tenn.) 9; *Gaston* v. *Mace,* 33 W. Va. 14; *Webster* v. *Harris,* 111 Tenn. 668.

The public right of user includes the public right of fishery. *Willow River Club* v. *Wade,* 100 Wis. 86; *Lincoln* v. *Davis,* 53 Mich. 375.

The custom of the particular community makes it so. *Strother* v. *Lucas,* 12 Pet. 445.

The facts show an implied license in the community to do on the premises what defendants' vendors did, valid until revoked by fair notice to desist. *Marsh* v. *Colby,* 39 Mich. 626; *Knowles* v. *Dow,* 22 N. H. 387; *Driscoll* v. *Lime & Cement Co.,* 37 N. Y. 637; *Stevens* v. *Howerton,* 49 Ind. App. 151; *Noftager* v. *Barkdall,* 148 Ind. 531; *Thayer* v. *Jarnes,* 44 Wis. 388.

A trespasser who has acted under mistake of right and without wrongful intent may acquire title by accession. *Wooden-Ware Co.* v. *United States,* 106 U. S. 432, 444; *Pine River Logging Co.* v. *United States,* 186 U. S. 279, 294; *Powers* v. *United States,* 119 Fed. 562; *Fisher* v. *Brown,* 70 Fed. 570. The term "wilful" is not synonymous with "unlawful and without right." *Furnace Co.* v. *Tie Co.,* 153 Mo. App. 449, 450; *State* v. *Hussey,* 60 Maine, 410; *State* v. *Massey,* 97 N. Car. 465; *Felton* v. *United States,* 96 U. S. 699, 702; *United States* v. *Stock Yards Co.,* 162 Fed. 562; Words & Phrases (2d Series), vol. 4, p. 1294.

The test in such cases is whether or not the property taken has been changed in form or has been so enhanced in value by the labor and expenditure contributed by the trespasser that it would be unjust to permit the owner to recover the property in its converted form. 1 R. C. L. 123, § 10; 1 C. J. 385; *Wetherbee* v. *Green,* 22 Mich. 311; *Lewis* v. *Courtright,* 77 Ia. 190.

The fiction of title created by the general principle that a wilful trespasser cannot acquire title as against the

original owner by virtue of his own wrong cannot apply in this case, because (a) the shell gatherers acted in good faith upon a well-founded belief that they had a right to gather the mussels, and (b) the petitioners are innocent purchasers from an unintentional or inadvertent trespasser. *Railway Co.* v. *Hutchins,* 32 Oh. St. 571.

*Mr. S. Mayner Wallace* for respondent.

The rights of the parties should be determined just as if the thing taken had been so much lime. After being dug, boiled and shucked, the shells were piled and stored, for from ten days to one month, on the same lands, before being taken to the factory.

But, if the law pertaining to the ownership of animals be applied, the earthy, harmless, inoffensive, phlegmatic mussel ought not to be classed as a wild animal; but, rather, as a tame or domestic animal, in which event the land owners' rights of property were, of course, absolute, at all times. *State* v. *Taylor,* 27 N. J. L. 117; *Fleet* v. *Hegeman,* 14 Wend. 42; *State* v. *Van Vlack,* 101 Wash. 503; *Duchess of Sutherland* v. *Watson,* 6 MacPher. 199 (6 Scot. Sess. Cas., 3d Ser., p. 199).

" Whether any particular animal be of one class or the other, is to be determined by our knowledge of the habits of the class to which it belongs, as derived from the general observation and experience of naturalists." 3 Minor Inst., p. 7.  Dogs, *Sentell* v. *New Orleans & Carrollton R. R. Co.,* 166 U. S. 698; bees, *Parsons* v. *Manser,* 119 Iowa, 88; young pheasants, *Reg.* v. *Garnham,* 2 F. & F. 347; wild cattle, *Davis* v. *Green,* 2 Hawaii, 367.

Where a trespasser reduces a wild animal to possession, the same thereupon becomes the absolute property of the owner of the soil. Rabbits, *Blades* v. *Higgs,* 11 H. L. Cas. 621; grouse, *Lonsdale* v. *Rigg,* 11 Exch. 654; fish and game, *Arkansas* v. *Mallory,* 73 Ark. 236.  See Behring Sea Arbitrators' Decision, 32 Am. L. Reg. & Rev. 901. *Geer* v. *Connecticut,* 161 U. S. 519, and *Beach* v. *Morgan,*

67 N. H. 529, distinguished. See *Percy Summer Club* v. *Astle,* 163 Fed. 1; *Hardin* v. *Jordan,* 140 U. S. 371.

The Missouri statute of 1905; § 6508, Rev. Stats. Mo., 1909; § 5581, Rev. Stats. Mo., 1919, providing that title to all birds, game and fish shall be in the State "for the purpose of regulating and controlling the use and disposition of the same," is not adverse to plaintiff's position, even if it be said, *arguendo,* that damages are sought for the taking of the mussel rather than for the shell. The opposite construction would render such an enactment unconstitutional, if applied in circumstances here disclosed. The statute refers only to game, fish and birds that are "not now held by private ownership," and was enacted after the plaintiff's assignors acquired the land. But the statute only intends to make effective the State's police-power-interest, not to affect the citizen's private-property-ownership, as developed in the course of the common law.

Since Magna Carta and the Charter of the Forest, the ownership of birds, fish and game, so far as vested in the sovereign, has been uniformly regarded, not in a proprietary sense, but as a trust for the benefit of all the people in common. *Hartman* v. *Tresise,* 36 Colo. 146; *Arkansas* v. *Mallory,* 73 Ark. 236; *Schulte* v. *Warren,* 218 Ill. 108; *Rogers* v. *Jones,* 1 Wend. 237; *State* v. *Blount,* 85 Mo. 547; *State* v. *Weber,* 205 Mo. 46.

The land owner's possession, and right to the possession, of the shells (dug and stored on their lands), as against defendants, who had no better, or any, right or title, is, in and of itself, sufficient. The *jus tertii* is not available to defendants. *Armory* v. *Delamirie* (Smith's L. Cas.), 1 Str. 504; *United States* v. *Loughrey,* 172 U. S. 219; *Peru Co.* v. *Harker,* 144 Fed. 673; *Rosencranz* v. *Swofford Bros. Co.,* 175 Mo. 518.

The fact of navigability *vel non,* under the present record, is a question which is probably not now open; the trial court found that the waters were not navigable.

The opinion of the Court of Appeals demonstrates that the waters were non-navigable in fact and in law. And see *Brewer-Elliott Oil Co.* v. *United States,* 270 Fed. 102; [s. c. 260 U. S. 77]; Act March 2, 1919, c. 95 § 4, 40 Stat. 1275, 1287; *Slovensky* v. *O'Reilly,* 233 S. W. 478. But, even if navigable, the rights of the parties would still be the same; for the general right of user of such a navigable stream is strictly limited to highway purposes. *Hobart-Lee Tie Co.* v. *Grabner,* 206 Mo. App. 96.

The public right of navigation does not include or give the right to fish, hunt or trap where title to the underlying land is privately held. Annotation, 11 A. L. R. 241; fish, *Schulte* v. *Warren,* 218 Ill. 108; muskrats, *Johnson* v. *Burghorn,* 212 Mich. 19.

That the plaintiff's assignors had the exclusive right of fishing, is clear from the foregoing, and from the following, authorities: *Hardin* v. *Jordan,* 140 U. S. 371; *State* v. *Blount,* 85 Mo. 547; *Thompson* v. *Tennyson,* 148 Ga. 701; *Hartman* v. *Tresise,* 36 Colo. 146; *State* v. *West Tennessee Land Co.,* 127 Tenn. 575; *Hooker* v. *Cummings,* 20 Johns. 90.

There was no plea of any custom or of any implied license. Custom, from which any benefit may be derived, must be a lawful custom. *Adams* v. *Clark,* 189 Ky. 279.

The right to hunt or fish asserted is a *profit a prendre;* and the law seems clear that "a claim by custom to enjoy a *profit a prendre* in the soil of another is invalid and insupportable, for the reason that to allow such a claim would result in the destruction of value in the subject of the profit." 9 R. C. L., p. 745.

The value of the manufactured product, into which the shells passed, furnishes the proper measure of damages recoverable under the first count; and the Missouri statute, allowing treble damages in certain instances, applies under the second count.

Defendants made no inquiry, concerning ownership, prior to their getting the shells. Their agent asked for,

but did not obtain permission. See *Union Naval Stores Co.* v. *United States*, 240 U. S. 284; *Mason* v. *United States*, 273 Fed. 135; *Gray* v. *Parker*, 38 Mo. 160; *Sligo Furnace Co.* v. *Tie Co.*, 153 Mo. App. 442; 7 A. L. R. 901, et seq; Rev. Stats. Mo. 1909, § 5448; Rev. Stats. Mo. 1919, § 4242; Statham's Abridgment (Klingelsmith's), vol. 11, p. 1253; *Duchess of Sutherland* v. *Watson*, 6 MacPher. 199 (6 Scot. Sess. Cas., 3d Ser., p. 199); *Parker* v. *Lord Advocate* [1902], 4 Sess. Cas., 5th Ser., p. 707; s. c. [1904], 6 Sess. Cas., 5th Ser., p. 37; *Marsh* v. *McNider*, 88 Iowa, 390; *Oregon Iron Co.* v. *Hughes*, 47 Ore. 313; *Barnett Co.* v. *Oil Co.*, 254 Fed. 481; Rev. Stats. Mo., 1919, § 7058; *Jones* v. *De Merchant*, 26 Man. 455; 28 D. L. R. 561; *Silsbury* v. *McCoon*, 3 N. Y. 379.

*Mr. Frank M. Swacker*, by leave of court, filed a brief as *amicus curiae.*

MR. JUSTICE HOLMES delivered the opinion of the Court,

This is a suit brought by the respondent, who is also a cross-petitioner, to recover the value of mussel shells removed from the lands of the respondent's assignor and manufactured by the petitioners into buttons. It was brought in a Court of the State of Missouri, but was removed to the District Court of the United States. There were two counts; one simply for the conversion of the shells and a second alleging that the shells were part of the realty and that the plaintiff was entitled to treble damages under Rev. Stats. Mo. 1909, § 5448. (Rev. Stats. Mo. 1919, § 4242.) At the trial the District Court directed a verdict for the defendants, and the judgment was affirmed by the Circuit Court of Appeals. 258 Fed. 335. The main question was disposed of on the ground that by the Statutes of Missouri, Rev. Stats. 1909, §§ 6508, 6551, the title to the mussels was in the State.

As to the second count it was held that the mussels were not part of the realty. Later, a rehearing was granted, and while the Court adhered to its former opinion on the second count, it rightly, as we think, held that the statutes declaring the title to game and fish to be in the State spoke only in aid of the State's power of regulation and left the plaintiff's interest what it was before. See *Missouri* v. *Holland,* 252 U. S. 416, 434. It assumed that the defendants were trespassers and sent the case back for a new trial on that footing, the damages to be confined to the value of the shells at the date of conversion and not to include that subsequently added by manufacturing them into buttons. 270 Fed. 713.

The mussels were taken alive from the bottom of what seems to have been at times a flowing stream, at times a succession of pools, were boiled on the banks and the shells subsequently removed. As to the plaintiff's title, it is not necessary to say that the mussels were part of the realty within the meaning of the Missouri Statutes or in such sense as to make the plaintiff an absolute owner. It is enough that there is a plain distinction between such creatures and game birds or freely moving fish, that may shift to another jurisdiction without regard to the will of land owner or State. Such birds and fishes are not even in the possession of man. 252 U. S. 434. 2 Kent, Comm. 349. *Young* v. *Hichens,* 6 Q. B. 606. On the other hand it seems not unreasonable to say that mussels having a practically fixed habitat and little ability to move are as truly in the possession of the owner of the land in which they are sunk as would be a prehistoric boat discovered under ground or unknown property at the bottom of a canal. *Elwes* v. *Brigg Gas Co.,* 33 Ch. D. 562. *Reg.* v. *Rowe,* Bell, C. C. 93. *Barker* v. *Bates,* 13 Pick. 255. This is even more obvious as to the shells, when left piled upon the bank, as they were, to

·await transportation. *Northern Pacific R. R. Co.* v. *Lewis,* 162 U. S. 366, 378, 382. Possession is enough to warrant recovery of substantial damages for conversion by a trespasser. We say nothing about the character of the stream as to navigability. The jury at least might find that there was nothing in that to prevent the application of what we have said. We are slow to believe that there were public rights extending to the removal of mussels against the land owner's will.

But it cannot be said as matter of law that those who took the mussels were trespassers; or even wrongdoers in appropriating the shells. The strict rule of the English common law as to entry upon a close must be taken to be mitigated by common understanding with regard to the large expanses of unenclosed and uncultivated land in many parts at least of this country. Over these it is customary to wander, shoot and fish at will until the owner sees fit to prohibit it. A license may be implied from the habits of the country. *Marsh* v. *Colby,* 39 Mich. 626. In Missouri the implication is fortified by the limit of statutory prohibitions to enclosed and cultivated land and private ponds. Rev. Stats. 1919, §§ 5662, 3654. There was evidence that the practice had prevailed in this region. Whether those who took these mussels were entitled to rely upon it, and whether, if entitled to rely upon it for occasional uses, they could do so to the extent of the considerable and systematic work that was done were questions for the jury. They could not be disposed of by the Court. The implication of a license of the kind that we have mentioned from general understanding and practice does not encounter the difficulties that have been suggested in implying a license from conduct alone in cases where the same conduct after twenty years might generate an easement, it being a plain contradiction to imply *ad interim* a license which would prevent the acquisition of a prescriptive

right. *Chenery* v. *Fitchburg R. R. Co.*, 160 Mass. 211, 212.

As to the rule of damages in case the plaintiff recovers, in the absence of a decision by the Supreme Court of the State we should not regard the mussels as part of the realty within the meaning of the statute relied upon in the second count, and so far as appears at present we see no reason for charging the defendants, if at all, with more than the value of the mussels at the time of conversion, as ruled below. *Wetherbee* v. *Green*, 22 Mich 311. *Wooden-Ware Co.* v. *United States*, 106 U. S. 432. *Union Naval Stores Co.* v. *United States*, 240 U. S. 284. The result is that this judgment of the Circuit Court of Appeals is affirmed, but not all the principles laid down by it, and that the case will stand for trial by jury in the District Court.

*Judgment affirmed.*