SILBRICO CORPORATION, an Illinois
Corporation,
Plaintiff/Counterdefendant–Appellee,

v.

Herman ORTIZ,
Defendant/Counterplaintiff–Appellant.

No. 87–2230.

United States Court of Appeals,
Tenth Circuit.

June 23, 1989.

Jonathan B. Sutin of Sutin, Thayer & Browne, Albuquerque, N.M., for plaintiff/counterdefendant-appellee.

Steven L. Tucker of Jones, Snead, Wertheim, Rodriquez & Wentworth, P.A., Santa Fe, N.M., for defendant/counterplaintiff-appellant.

Before HOLLOWAY, Chief Judge, WRIGHT* and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiff-appellee Silbrico Corporation, as titleholder of a perlite processing mill, instituted this suit under 28 U.S.C. § 2201 seeking a declaratory judgment as to the legal effect of the mill's surface encroachment upon an unpatented lode mining claim owned by defendant-appellant Herman Ortiz. Ortiz counterclaimed pursuant to Fed. R.Civ.P. 13 alleging Silbrico's breach of a mining lease, forfeiture of the encroaching structure, and conversion of eight unpatented lode mining claims. Following a bench trial, the district court entered findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a). In a well-reasoned opinion, the court held that Silbrico had cured its breach of the lease and Ortiz had no standing to complain of the encroachment in view of section four of the Multiple Use Mining Act of 1955, 30

U.S.C. § 612. Ortiz appeals only the denial of relief with respect to the encroachment issue and his request for fees and expenses under an indemnification clause in the lease. Appellate jurisdiction arises under 28 U.S.C. § 1291. While we review conclusions of law de novo, Fed.R.Civ.P. 52(a) dictates that we set aside findings of fact only if clearly erroneous. *Lujan v. Walters*, 813 F.2d 1051, 1058 (10th Cir.1987). For the reasons set forth herein, we affirm.

### Background

In August 1957, Ortiz located eight unpatented lode mining claims in Taos County, New Mexico, respectively referred to as Mercy #1 through #8. In December 1960, Ortiz leased the Mercy claims to United Perlite Corporation. Under the terms of the lease, the lessee, in exchange for royalty payments to the lessor, was to mine perlite ore from the claims "for a term of five (5) years, and so long thereafter as such ore is produced and shipped from said premises in paying quantities." In addition, the lessee undertook to "keep the aforesaid claims in good standing" and "observe and comply with all applicable Federal and State laws" in the operation of the mine.

United Perlite mined the Mercy claims until October 1969. In that month, United Perlite, with Ortiz' written consent, assigned the lease to Silbrico. Silbrico expressly agreed to "observe and perform all the terms, conditions, obligations and stipulations" contained in the lease. During the same period, United Perlite also conveyed to Silbrico certain properties including a perlite processing mill thought to sit on a claim separate from but adjacent to the Mercy claims. Silbrico mined the Mercy claims without incident until December 1984, when it informed Ortiz that royalty payments would cease because his claims had been invalidated for noncompliance with the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701–1782.

---

* Honorable Eugene A. Wright, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

The FLPMA required owners of unpatented mining claims located prior to the law's effective date of October 21, 1976, to file, within three years of that date, location notices with the Bureau of Land Management (BLM). 43 U.S.C. § 1744(a). Additionally, the law requires annual filing of a "notice of intention to hold" the claims or "an affidavit of assessment work performed" on the claims during the past year. Failure to file the prescribed documents is "deemed conclusively to constitute an abandonment of the mining claim[s]". *Id.* § 1744(c). *See United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (upholding constitutionality of FLPMA's recording provisions). Despite the clause in the lease requiring the lessee to comply with federal law and keep the claims in good standing, Silbrico failed to abide by the FLPMA and preserve the Mercy claims. In July 1984, BLM invalidated the claims.

Ortiz became understandably upset when Silbrico informed him in December 1984 that his claims had been invalidated and replaced by Silbrico Mining Claims # 1 through # 23. In January 1985, Ortiz gave Silbrico notice of default under the mining lease based upon its failure to maintain the Mercy claims and pay royalties. Silbrico discontinued mining operations on the Mercy claims in April 1985 because of mineral exhaustion. As a result of settlement negotiations, Silbrico tendered to Ortiz all outstanding royalties due under the lease through April 1985. Silbrico further proposed to transfer back to Ortiz his original interest in the Mercy claims by relocating Mercy # 1 through # 8 and subordinating Silbrico # 1 through # 23, save for a reservation securing Silbrico's right to operate that portion of the processing mill situated on Mercy # 1 as revealed by a May 1985 survey. Ortiz accepted the royalties, but demanded that Silbrico pay him $4000 per month rent until the encroachment, one-tenth of an acre on a twenty-acre claim, was rectified and reclamation was complete.

## I.

Applying the Multiple Use Mining Act of 1955 (Act), the district court held that Ortiz had no standing to complain of the mine's encroachment because he adduced no evidence at trial of any material interference with his own mining activity on Mercy # 1. Section four of the Act states in pertinent part:

> Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof.... Any such mining claim shall also be subject, prior to issuance of patent therefor, to the right of the United States, its permittees, and licensees, to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land: *Provided, however,* That any use of the surface of any such mining claim by the United States, its permittees or licensees, shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto....

30 U.S.C. § 612(b) (emphasis in original).

### A.

■ Ortiz initially asserts the district court misapplied the Act to Mercy # 1. The Act applies only to unpatented mining claims located after its effective date of July 23, 1955. *Converse v. Udall,* 399 F.2d 616, 617 (9th Cir.1968), *cert. denied,* 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569 (1969). Under the Mining Law of 1872, 30 U.S.C. § 26, mining claims located prior to July 23, 1955, vested the locator with the "exclusive right of possession and enjoyment of all the surface included within the lines of their locations." This statute was construed to mean that as against parties other than the United States, the locator had "exclusive right to use the surface of this land." *United States v. Etcheverry,* 230 F.2d 193, 195 (10th Cir.1956). *See generally* 2 *American Law of Mining* § 36.03[1] (2d ed. 1984). According to Ortiz, the Mercy lode mining claims were

located in April 1955 as placer mining claims known as Mercy # 1 and # 2. The "Amended Lode Mining Location Notices" filed in August 1957 to "relocate" the two placer claims as eight lode mining claims purportedly relate back to the original filing.[1]

■ Since *McEvoy v. Hyman*, 25 F. 596 (C.C.D.Colo.1885), courts have recognized a claim owner's right to correct minor defects in the record by amending a mineral location. Thus, an amended location has been said to relate back where it changes the name of the claim, *Johnson v. Young*, 18 Colo. 625, 34 P. 173, 175 (1893), excludes excess ground but preserves the original discovery point, *Waskey v. Hammer*, 223 U.S. 85, 91, 32 S.Ct. 187, 188, 56 L.Ed. 359 (1912), corrects the name of the locators, *Thompson v. Spray*, 72 Cal. 528, 14 P. 182, 183–85 (1887), or otherwise changes the record of a location without enlarging the rights appurtenant to it, *In re R. Gail Tibbetts*, 86 I.D. 538, 543 (1979), *overruled in part on other grounds, In re Hugh B. Fate, Jr.*, 86 IBLA 215, 226 (1985). More generally, an amendment will "relate back to original, *valid* although defective locations through which the relocator claims." *United States v. Consolidated Mines & Smelting Co., Ltd.*, 455 F.2d 432, 449 (9th Cir.1971) (emphasis added). *Accord R. Gail Tibbets*, 86 I.D. at 541–42. But an "amended" location cannot relate back if the original location is void. *See Brown v. Gurney*, 201 U.S. 184, 191, 26 S.Ct. 509, 511, 50 L.Ed. 717 (1906).

■ That the same mineral deposit cannot be the basis for both a lode and placer claim is beyond doubt. In *Cole v. Ralph*, 252 U.S. 286, 295, 40 S.Ct. 321, 325, 64 L.Ed. 567 (1920), Justice Van Devanter, speaking for the Court, explained:

While the two kinds of location—lode and placer—differ in some respects, a discovery within the limits of the claim is equally essential to both. But to sustain a lode location the discovery must be of a vein or lode of rock in place bearing valuable mineral, and to sustain a placer location it must be of some other form of valuable mineral deposit, one such being scattered particles of gold found in the softer covering of the earth. *A placer discovery will not sustain a lode location, nor a lode discovery a placer location.*

(emphasis added). *Accord Titanium Actynite Indus. v. McLennan*, 272 F.2d 667, 668–73 (10th Cir.1959) (finding that placer claimants were entitled to possession as against lode claimants because no veins of mineral-bearing rock were present within claim held not clearly erroneous); *Duffield v. San Francisco Chem. Co.*, 205 F. 480, 486 (9th Cir.1913) (location of a lode mine as a placer is void); *Chemi–Cote Perlite Corp. v. Bowen*, 72 I.D. 403, 407 (1965) (same mineral deposit cannot be basis for both a lode and placer location).

■ Consequently, Ortiz' purported 1957 amendment changing two placer claims to what presumably were more properly classified as eight lode claims cannot relate back to the original 1955 placer location. "A miner cannot amend a placer location by filing a lode location. The two claims are located for altogether different reasons." *In re Paul Vaillant*, 90 IBLA 249, 253 (1986). Because the subsequent lode location was necessarily adverse to the former placer location, the location date of the Mercy # 1 must be August 1957 and therefore, the district court properly applied the 1955 Act.

### B.

Although not conceding its applicability, Ortiz next argues that the district court misconstrued section four of the Act. Ortiz maintains that even after passage of the Act, claim owners still enjoy an exclusive right of possession as against others engaged in mining activity. While section

---

**1.** Silbrico argues that Ortiz is prohibited from raising the relation back issue on appeal because it was not properly preserved below. The district court, however, applied the 1955 Act without notice to either party. When the district court rules without affording the parties an opportunity to object, the issue is preserved for appeal. *Jarvis v. Commercial Union Assurance Cos.*, 823 F.2d 392, 396 (10th Cir.1987).

four is not a model of clarity, we believe otherwise. The statute may be read to preclude Ortiz from complaining about activities on his claims which do not interfere with his ability to prospect, mine or process the minerals thereon. *See Freese v. United States*, 6 Cl.Ct. 1, 14 (1984), *aff'd memo*, 770 F.2d 177 (Fed.Cir.1985) (only property right in unpatented claims is a right to possession for purposes of developing and extracting mineral resources).

 Today, the owner of an unpatented mining claim is entitled to nonexclusive access to his mining operations. 43 C.F.R. § 3802.4–2. In holding a claim owner had no legitimate expectation of privacy in his claim, the First Circuit recently noted that under section four, "any member of the public is free to picnic on the claim, sleep on it, or watch tumbleweeds blow across it." *United States v. Fahey*, 769 F.2d 829, 837 (1st Cir.1985). Similarly, in *United States v. Curtis–Nevada Mines, Inc.*, 611 F.2d 1277, 1286 (9th Cir.1980), the Ninth Circuit held that section four affords the public a right of free access to the surface of a mining claim for recreational use or access to adjacent land: "Congress ... limit[ed] the exclusive possession of mining claimants so as to permit the multiple use of the surface resources of the claims prior to patenting of the claims, so long as that use did not materially interfere with prospecting or mining operations." *Id.* at 1283.

Congress enacted this legislation to combat the "waste of valuable resources of the surface on land embraced within claims." H.R. 730, 84th Cong., 1st Sess., *reprinted in* 1955 U.S.Code Cong. & Admin.News 2474, 2479 (hereinafter H.R.). Accordingly, an unpatented mining claim is subject to the right of the United States, its permittees and licensees "to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof" so long as such shall not "endanger or materially interfere with prospecting, mining or processing operations or

uses reasonably incident thereto." 30 U.S.C. § 612(b). In view of the Act's legislative history, its language is sufficiently broad to permit surface uses which cannot reasonably be said to impede the claim owners mining operations and related activities. H.R. at 2475.[2] Because Silbrico is not a competing mining claimant and is not interfering with any mining activity on Mercy # 1, which is exhausted, Ortiz has suffered no injury due to the processing mill's encroachment and is entitled to neither equitable nor legal relief.

## II.

 Lastly, Ortiz claims a right to attorneys' fees and costs as a result of an indemnification provision in the mining lease: "In the operation of the said premises, the Lessee ... shall indemnify and save Lessor from any suit, claim or action, including the costs of defending the same, arising from Lessee's operation, occupancy or use of the premises." The lease, however, expired by its own terms in May 1985 when perlite could no longer be mined from the Mercy claims in paying quantities. Silbrico instituted this action in December 1985. Because it needs no lease to continue operating the processing mill, Silbrico is not a holdover tenant. Thus, Ortiz cannot now rely on the lease to obtain the recovery he seeks.

The judgment in all respects is AFFIRMED. Each party shall bear its own costs on appeal.

---

**2.** Ortiz does not challenge Silbrico's status as a permittee or licensee of the United States for purposes of section four. The principle that the public has an implied license to use lands within the public domain is well established. *E.g.,* *McKee v. Gratz*, 260 U.S. 127, 136, 43 S.Ct. 16, 17, 67 L.Ed. 167 (1922); *Light v. United States*, 220 U.S. 523, 535, 31 S.Ct. 485, 487, 55 L.Ed. 570 (1911); *Buford v. Houtz*, 133 U.S. 320, 326, 10 S.Ct. 305, 307, 33 L.Ed. 618 (1890).