**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DENNIS L. STANTON,

      Plaintiff-Appellant,

v.

ROBERT FURLONG; LARRY
STEERMAN,

      Defendants-Appellees.

No. 02-1336
(D.C. No. 00-RB-2219 (PAC))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **KELLY** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Dennis L. Stanton, an inmate at Colorado's Sterling Correctional Facility (SCF) during the period relevant to this action, appeals from a judgment

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

in favor of SCF officer Larry Steerman following a bench trial on his claims of excessive force and retaliation. [1] We review the district court's legal conclusions de novo and its fact findings for clear error, *Silbrico Corp. v. Ortiz*, 878 F.2d 333, 334 (10 th Cir. 1989), and affirm for the reasons explained below.

The basic historical facts are largely undisputed. Where conflicts in the evidence do exist, we follow the pertinent findings of the district court, which have specific "factual support in the record" and do *not* leave us "with the definite and firm conviction that a mistake has been made." *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10 th Cir. 2001).

Stanton's claims have their genesis in a disagreement over a rule barring unassigned inmates from the prison recreation yard on weekends and holidays. Shortly after Stanton successfully challenged a disciplinary action based on his violation of the rule, he and Steerman had a conversation about its continued enforcement, culminating with a pointed exchange in which Stanton (1) stated he intended to use the yard and hoped Steerman would be there when he did "to try and stop him," and (2) replied to Steerman's inquiry whether that was a threat by saying "you're damn right it is." Steerman responded by handcuffing Stanton and having him escorted to the shift commander's office. After questioning Stanton

---

[1] The district court was clearly correct to dismiss warden Robert Furlong from the case for lack of personal involvement. *See* R., docs. 64, 70.

for some ten minutes, the shift commander ordered him taken to segregation for threatening an officer. This disciplinary action was upheld through administrative appeal and subsequent state judicial review.

Stanton said nothing about the handcuffs to the shift commander, but when he was being escorted he complained that the right handcuff was too tight. One of the officers agreed to loosen it and in the process also found that it was not double-locked. The officer reported both matters to the shift commander and Steerman was counseled about proper handcuffing procedure. When Stanton arrived at the segregation unit and complained of some tingling in his right wrist, he was examined by medical personnel. They found two abrasions and some slight edema–the kind of minor trauma which other testimony in the record indicated was consistent with the normal use of handcuffs. X-rays taken a few days later revealed an old, poorly healed fracture but no new injury to the wrist.

On these facts, the district court held that Steerman had not used excessive force in handcuffing Stanton. The district court applied the proper legal standard, asking whether Steerman had "acted maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline." *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10 th Cir. 1996) (following *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)); *see also Northington v. Jackson*, 973 F.2d 1518, 1523 (10 th Cir. 1992). Noting the evident security purpose for

Steerman's use of the handcuffs, the length of time during which the handcuffed Stanton voiced no discomfort while speaking with the shift commander, and the relatively minor indicia of trauma ultimately found on medical examination, the district court concluded that Steerman did not handcuff Stanton maliciously to inflict pain or cause harm but reasonably to maintain order while the appropriate institutional response to Stanton's threatening behavior was decided upon. *See* R., Supp. Vol. I, at 196. We discern no error in this necessarily circumstantial determination. In particular, we note that while significant physical injury is not a legal prerequisite for an excessive-force claim, the extent of the injury inflicted on an inmate can be, and clearly was here, a relevant factual consideration "in determining whether corrections officers unnecessarily and wantonly inflicted pain." *Northington*, 973 F.2d at 1523.

The principles governing Stanton's claim of retaliatory prison discipline were summarized by this court in *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998):

> We have held that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. This principle applies even where the action taken in retaliation would be otherwise permissible. . . . [H]owever, it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity. *Accordingly, a plaintiff must prove*

-4-

*that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place* .

(emphasis added, citation and quotations omitted). Given the "but for" causation test to be applied and unique prison-management interests to be accommodated, if a reasonably related "legitimate penological interest" is found, in fact, to underlie the challenged disciplinary action, a retaliation claim must fail. *See id.* Here, the district court's finding that Stanton was disciplined because of misconduct has factual support in the record and suffices to defeat Stanton's retaliation claim.

Finally, Stanton argues that the district court impermissibly prejudiced his case when it denied his last-minute motion for service of subpoenas on numerous witnesses. We review a procedural ruling solely for an abuse of discretion. *See, e.g.*, *United States v. Lepiscopo*, 458 F.2d 977, 978 (10 th Cir. 1972); *United States v. Gutierrez*, 48 F.3d 1134, 1138 (10 th Cir. 1995).

Just days before trial Stanton realized he had failed to take any steps to obtain subpoenas for many of his witnesses and sent a motion to the district court requesting assistance in having the necessary subpoenas served at government expense. On the day of trial, the district judge, who had not yet received the motion, responded to Stanton's oral recitation of these events as follows:

> This matter has been set for trial for some time. Furthermore, this litigation . . . is roughly two years old. You previously, the record discloses, had filed a motion for the issuance of subpoenas by the court. That was duly considered and denied by Magistrate Judge Coan.

At that point, relatively early on in this litigation, you were on notice of what efforts, if any, you must undertake as a *pro se* litigant to arrange the presentation of your witnesses in this trial, and the court is somewhat astonished to learn that you have waited until Wednesday of this past week to make those arrangements.

The court has not received or reviewed your request. It is not timely. It cannot be granted by the court unless there is a continuance of this trial. The court is not inclined to continue the trial. This is your opportunity to make an opening statement, and you may proceed.

R. Supp. Vol. I, at 6.

We see no abuse of discretion here. The transcript reflects the thoughtful consideration of relevant procedural facts and an informed judgment thereon. We note that prison authorities brought two of Stanton's inmate witnesses to trial and Stanton himself testified as well. His contention that the voluntary presence of these inmate witnesses somehow renders suspect the absence of prison employees he had wanted to question suggests a basic misunderstanding of the purpose of the subpoena process as the prescribed means to compel the attendance of just such involuntary non-party witnesses. *See* Fed. R. Civ. P. 45(a)(1)(C), (2).

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

-6-