J-S07025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUDD HARRISON SHUMAKER | |
| Appellant | No. 1241 MDA 2015 |

Appeal from the Judgment of Sentence July 10, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003578-2014

BEFORE:  BOWES, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED APRIL 28, 2016**

Judd Harrison Shumaker appeals from the judgment of sentence imposed on July 10, 2015, in the Court of Common Pleas of Berks County. That same day, at the conclusion of a stipulated bench trial, the trial court convicted Shumaker of possession of a controlled substance (cocaine) and two counts of possession of drug paraphernalia.[1] The trial court sentenced Shumaker to an aggregate term of two years' probation.  On appeal, Shumaker challenges the court's denial of his suppression motion pursuant to **Florida v. Jardines**, 133 S. Ct. 1409 (U.S. 2013).  After a thorough

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(16) and (a)(32), respectively.

review of the submissions by the parties, the certified record, and relevant law, we affirm.

The trial court made the following findings of fact, based upon the evidence presented at the November 21, 2014, suppression hearing:

1. On or about June 6, 2014, Officer Peter O'Brien of the Bern Township Police Department was dispatched to 91 Tobias Lane in Bernville, Berks County, Pennsylvania to check on a resident who was reportedly under the influence of a controlled substance.

2. It was dark outside, so Office[r] O'Brien illuminated a pathway to the residence with a flashlight.

3. As he approached the residence, Officer O'Brien noticed that [Shumaker] was sitting on the porch.

4. Officer O'Brien observed that [Shumaker] was holding a box on his lap, and asked [him] if any weapons were in the box.

5. [Shumaker] replied, "No," and quickly opened and closed the box, revealing what Officer O'Brien immediately recognized as a glass pipe commonly used to smoke crack cocaine.

6. Officer O'Brien asked [Shumaker] to give him the box so that he could retrieve the pipe.

7. [Shumaker] opened the box, removed a small orange metal container, and attempted to conceal it in his left hand.[2]

_____

[2] The notes of testimony indicate that after Shumaker removed the small orange container, he handed over the box to Officer O'Brien. N.T., 11/21/2014, at 8.

8.  After Officer O'Brien informed [Shumaker] that he saw him remove the container from the box, [Shumaker] handed the container to the Officer.

9.  Officer O'Brien opened the container to ensure that a small weapon, such as a razorblade, was not inside.

10.  Upon opening the container, Officer O'Brien discovered thirty small bags of suspected crack cocaine.

11.  The entire interaction between Officer O'Brien and [Shumaker] lasted less than a minute.

Findings of Fact and Conclusions of Law in Disposition of Shumaker's Omnibus Pretrial Motion, 12/23/2014, at 2-3.

Shumaker was arrested and charged with one count of possession of controlled substance and two counts of possession of drug paraphernalia. On October 1, 2014, he filed a motion to suppress evidence. A hearing was held regarding the matter on November 21, 2014. On December 23, 2014, the court denied Shumaker's suppression motion. Shumaker's case proceeded to a one-day stipulated non-jury trial on July 10, 2015. The court convicted him of all counts. That same day, the court sentenced him to one year of probation on the cocaine possession count and one year of probation for each paraphernalia count, running concurrently with each other but consecutive to the possession conviction. Shumaker did not file a post-sentence motion but did file this timely appeal.[3]

_____

[3] On July 20, 2015, the trial court ordered Shumaker to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). *(Footnote Continued Next Page)*

In Shumaker's sole issue, he contends the court erred in denying his motion to suppress because the police did not possess reasonable suspicion that he was engaged in criminal activity to justify a **Terry**[4] stop or search. Specifically, relying on **Jardines**, he states:

> Here, police, responding to an anonymous telephone call of an overdose, observed [Shumaker] sitting on his front porch in no state of physical distress and not committing any criminal offenses. [Shumaker] was sitting with a box on his lap. Police immediately entered the porch of [Shumaker]'s house, decided to search for weapons and asked [him] if there were weapons in the box on his lap. In response to police questioning [Shumaker] stated that there were not and opened the box, displaying apparent drug paraphernalia.
>
> The key distinction between this and questioning which might be acceptable under an implied license to approach a residence and make contact is that police physically invaded the curtilage when [it] was not necessary to do so in order to make contact with the occupant, who was sitting on the front porch. Police could have approached and made inquiries of [Shumaker] without confronting him within the curtilage after deciding to search for weapons for no apparent reason.

Shumaker's Brief at 11-12. Moreover, Shumaker argues:

> To march onto the front porch without asking permission to conduct a search of an occupant's person and effects for weapons is physically intrusive. Further, the scope of any license – express or implied – is limited not only to a particular area but also to a specific purpose[.] The social norms that invite a visitor to approach an occupant on his front porch do not invite him onto the porch or invite him onto the porch to conduct

_(Footnote Continued)_ _____

Shumaker filed a concise statement on August 3, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 6, 2015, incorporating and adopting its December 23, 2014 findings of fact and conclusions of law.

[4] **Terry v. Ohio**, 392 U.S. 1 (1968).

a search. No one is impliedly invited to enter the protected premises of the home in order to do nothing but conduct a search.

*Id.* at 13. Shumaker concludes the police did not possess reasonable suspicion and therefore, he was improperly seized within the curtilage of his home. *Id.* at 14.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

In *Commonwealth v. Boswell*, 721 A.2d 336 (Pa. 1998), the Pennsylvania Supreme Court explained:

> Interaction between police and citizens may be characterized as a "mere encounter," an "investigative detention," or a "custodial detention." Police may engage in a mere encounter absent any

- 5 -

suspicion of criminal activity, and the citizen is not required to stop or to respond. *Commonwealth v. Vasquez*, 703 A.2d 25, 30 (Pa. Super. 1997). If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. *Commonwealth v. Jackson*, 428 Pa. Super. 246, 249, 630 A.2d 1231, 1233 (1993). If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot, and the citizen is subjected to a stop and a period of detention. *Id.* Probable cause must support a custodial detention or arrest. *Id.*

To decide whether a seizure has occurred, we apply the following objective test: "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." [*Florida v. Bostick*, 501 U.S. 429, 439, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991)]. In applying this test, it is necessary to examine the nature of the encounter. *Commonwealth v. Lewis*, 535 Pa. 501, 508, 636 A.2d 619, 623 (1994). Circumstances to consider include, but are not limited to, the following: the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. *Terry v. Ohio*, [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)], *supra*; [*Interest of Jermaine*, 399 Pa. Super. 503, 582 A.2d 1058, 1060-61 (Pa. Super. 1990)]. *See also United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "[O]therwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Mendenhall*, [446 U.S.] at 555, 100 S.Ct. 1870, 64 L. Ed. 2d 497.

*Id.* at 340.

Moreover,

[i]t is well established that "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania Constitution." *Commonwealth*

- 6 -

*v. Gibbs*, 2009 PA Super 181, 981 A.2d 274, 279 (Pa. Super. 2009). Our courts have extended this constitutional protection to the curtilage of a person's home by analyzing "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id.* at 279. "Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Commonwealth v. Fickes*, 2009 PA Super 64, 969 A.2d 1251, 1256 (Pa. Super. 2009).

*Commonwealth v. Simmen*, 58 A.3d 811, 815 (Pa. Super. 2012).

Additionally, where an investigation takes place in a constitutionally protected area, the question becomes "whether it was accomplished through an unlicensed physical intrusion." *Jardines*, 133 S. Ct. at 1415 (footnote omitted). In *Jardines*, the Supreme Court explained:

While law enforcement officers need not "shield their eyes" when passing by the home "on public thoroughfares," [*California v. Ciraolo*, 476 U.S. 207, 213, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986)], an officer's leave to gather information is sharply circumscribed when he steps off those thoroughfares and enters the Fourth Amendments protected areas. In permitting, for example, visual observation of the home from "public navigable airspace," we were careful to note that it was done "in a physically nonintrusive manner." *Ibid.Entick v. Carrington*, 2 Wils. K. B. 275, 95 Eng. Rep. 807 (K. B. 1765), a case "undoubtedly familiar" to "every American statesman" at the time of the Founding, *Boyd v. United States*, 116 U.S. 616, 626, 6 S. Ct. 524, 29 L. Ed. 746 (1886), states the general rule clearly: "[O]ur law holds the property of every man so sacred, that no man can set his foot upon his neighbour's close without his leave." 2 Wils. K. B., at 291, 95 Eng. Rep., at 817.

…

"A license may be implied from the habits of the country," notwithstanding the "strict rule of the English common law as to entry upon a close." *McKee v. Gratz*, 260 U.S. 127, 136, 43 S. Ct. 16, 67 L. Ed. 167 (1922) (Holmes, J.). We have accordingly

- 7 -

recognized that "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds." ***Breard v. Alexandria***, 341 U.S. 622, 626, 71 S. Ct. 920, 95 L. Ed. 1233, 62 Ohio Law Abs. 210 (1951).  This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.  Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters.  Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." ***Kentucky v. King***, 563 U.S. ___, ___, 131 S. Ct. 1849, 179 L. Ed. 2d 865, 881 (2011).

***Id.*** at 1415-1416 (footnote omitted).[5]

> [w]hen an officer enters the curtilage, the key inquiry under the property based test becomes whether an "implied license" exists for the officer's conduct within the curtilage.  [***Jardines***, 133 S. Ct.] at 1415.  For example, an implied license exists for the officer to approach the house by the front path without a warrant and knock on the front door for the purpose of asking the occupant about an ongoing investigation.  ***Id.***  Such conduct is permissible because it is "no more than any private citizen might do." ***Id.***  Conversely, an officer does not have an implied license to "explor[e] the front path with a metal detector, or march[] his bloodhound into the garden before saying hello and asking permission." ***Id.***

***Commonwealth v. Eichler***, __ A.3d __, 2016 Pa. Super. LEXIS 60, 16-17

n.5  [439 MDA 2015] (Pa. Super. Feb. 2, 2016).

---

[5]  ***See also Commonwealth v. Gibson***, 638 A.2d 203, 207 (Pa. 1994) ("the police have the power to knock on the doors of the citizens of this Commonwealth for investigatory purposes without probable cause").

Turning to the present matter, at the November 21, 2014, suppression hearing, Officer O'Brien testified that on the night in question, he was requested to respond to Shumaker's house "to check on his well-being regarding a possible heroin overdose." N.T., 11/21/2014, at 4. The officer stated it was dark and raining that evening and he noticed the garage door was open with the light on. *Id.* at 5-6. He observed another individual run to the back of the garage and hide. *Id.* He then saw Shumaker sitting on the side porch of the house. *Id.* at 5. Officer O'Brien testified Shumaker asked him what he was doing there and the officer responded that he was there to check on Shumaker. *Id.* at 7. The officer observed that Shumaker had a box on his lap and asked, "Are there any guns in there or any weapons in there." *Id.* Shumaker responded in the negative and "turned the box and opened it showing [the officer] there were no guns in the box." *Id.* at 8. Officer O'Brien stated he saw "in the box that there was a glass pipe that would be used to smoke crack cocaine." *Id.*

The officer indicated Shumaker quickly opened and closed the box so he asked Shumaker to give him the box because he had seen the pipe. *Id.* Officer O'Brien testified Shumaker opened the box again, removed a small orange container, and handed over the box. *Id.* The officer then stated, "Well, I just said, I saw you take that out of there. And with that, he --

without any prompting, he just handed [the container] over to me." *Id.* at 8-9.[6]

Based on the testimony, the trial court made the following conclusions of law:

> 2.    The encounter between Officer O'Brien and [Shumaker] constituted a mere encounter, as [Shumaker] was free to walk inside his home, or ask Officer O'Brien to leave.
>
> 3.    [Shumaker] was not required to respond to Officer O'Brien's questions, but did so voluntarily.
>
> …
>
> 5.    Here, [Shumaker]'s consent to search was freely given. [Shumaker] was not physically detained, was not under arrest, and was not coerced in any fashion.  When Officer O'Brien asked [Shumaker] if he had any weapons, [Shumaker] voluntarily opened the box, revealing the pipe to Officer O'Brien.
>
> 6.    Similarly, after being informed by Officer O'Brien that the Officer saw him remove the small metal container from the box, [Shumaker] voluntarily handed the container to Officer O'Brien.

Findings of Fact and Conclusions of Law in Disposition of Shumaker's Omnibus Pretrial Motion, 12/23/2014, at 4-5.

We agree with the trial court's determination.  The exchanges between Officer O'Brien and Shumaker took place on the porch.  Accordingly, the two men were located in the curtilage of the residence, a part of the home for

_____

[6]   Officer O'Brien indicated there were 30 small packets of rock cocaine inside the container. *Id.* at 9.

Fourth Amendment purposes. **See Simmen**, 58 A.3d 811, 815. Therefore, as set forth in **Jardines**, we must determine whether the officer's investigation was achieved through "an unlicensed physical intrusion." **Jardines**, 133 S. Ct. at 1415.

We find that Officer O'Brien's actions in this case are dissimilar to the investigating officers in **Jardines** who entered onto the porch of the home with a drug-sniffing dog. Here, Officer O'Brien merely walked up to the porch to respond to a report that someone's well-being was endangered based on a possible heroin overdose. Accordingly, Officer O'Brien encountered Shumaker from a lawful vantage point and the facts surrounding the incident do not amount to an unlicensed physical intrusion.

Furthermore, contrary to Shumaker's argument, Officer O'Brien's interaction with Shumaker did not amount to a search as it was just a mere encounter. In considering the circumstances surrounding the exchange, as identified in **Boswell**, 721 A.2d at 340, the number of officers present during the interaction; whether the officer informed Shumaker he was suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked, it is evident that Officer O'Brien's conduct with respect to Shumaker was not offensive and cannot be considered a seizure. While Officer O'Brien may have asked about weapons to ensure his own personal safety, Shumaker was not required to respond to

Officer O'Brien's questions but did so of his own volition. Furthermore, the officer did not tell Shumaker to open the box and did not put his own hands on the box to seize and search. Officer O'Brien merely asked Shumaker if there were any weapons in the box.

Lastly, as the trial court correctly points out, Shumaker voluntarily consented to showing Office O'Brien the contents of his box when he opened it without any request to do so. *See Commonwealth v. Kemp*, 961 A.2d 1247, 1261 (Pa. Super. 2008) (the "following factors outlined therein are pertinent to a determination of whether consent to search is voluntarily given: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search."). The evidence supports a conclusion that Officer O'Brien did not compel Shumaker to do anything, let alone open the box. Likewise, the fact that it was readily apparent to Officer O'Brien the incriminating nature of the pipe in the box is no consequence because Shumaker had voluntarily opened the box. Similarly, Shumaker voluntarily

handed over the orange container without being requested to do so by the officer.

Because Officer O'Brien had a legitimate purpose for being on the porch, the exchanges between him and Shumaker constituted a mere encounter, and Shumaker voluntarily handed over the box and orange container, we conclude the trial court did not err in denying Shumaker's motion to suppress. Accordingly, his sole issue on appeal fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2016