PRESENT:  All the Justices

DANIEL PAUL OPRISKO

OPINION BY
v.  Record No. 151450                    JUSTICE S. BERNARD GOODWYN
February 9, 2017

DIRECTOR OF THE DEPARTMENT
OF CORRECTIONS


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

In this appeal, we consider whether the habeas court erred in determining that the rule announced by the Supreme Court of the United States in *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409 (2013)—that use of a drug-sniffing dog on a homeowner's porch constitutes a search within the meaning of the Fourth Amendment of the United States Constitution—does not apply retroactively to a conviction finalized prior to *Jardines*.  We also consider whether the habeas court abused its discretion by denying a plenary hearing.

BACKGROUND

On July 9, 2007, a grand jury for the City of Newport News indicted Daniel Paul Oprisko (Oprisko) for the felony of possessing, with intent to distribute, more than one-half ounce but less than five pounds of marijuana, in violation of Code § 18.2-248.1.  Oprisko moved to suppress the fruits of the search that led to his arrest on the ground that the probable cause for the search was provided by the warrantless use of a drug-sniffing dog in violation of the Fourth Amendment of the United States Constitution.

The Circuit Court of the City of Newport News held a suppression hearing at which two detectives testified that, in the course of investigating an illegal drug complaint at Oprisko's address, they approached the house with their drug dog, Sam, to conduct a "knock and talk." Oprisko introduced photographic and testimonial evidence that "No Trespassing" signs were

posted on his property, but the detectives stated that they did not see such signs. The detectives testified that when they were approximately 20 feet from Oprisko's house, Sam alerted to the presence of drugs in the house by pulling his handler toward the house, onto the porch, and scratching the door. Subsequently, the detectives obtained a search warrant for Oprisko's home and seized 51 marijuana plants from the attic. Neither the search warrant nor the supporting affidavit was introduced into evidence.

Oprisko argued that the detectives conducted an unlawful search by exceeding the scope of implied consent in entering onto the curtilage of his property and using Sam to conduct a drug-detection sniff on the porch. He contended that use of a drug-sniffing dog is a search, and that a search warrant cannot be obtained solely on the basis of an illegal search. The court denied the motion to suppress, finding that the detectives acted within the scope of implied consent in approaching the home with Sam to conduct a "knock and talk," and that the "No Trespassing" signs were too faded to negate that implied consent.

On January 9, 2009, the circuit court found Oprisko guilty of felony possession with intent to distribute in violation of Code § 18.2-248.1 and, on February 5, it imposed a sentence of five years' imprisonment with five years suspended, conditioned upon a five-year period of good behavior, one year of supervised probation and a six-month suspension of Oprisko's driver's license.

Oprisko appealed to the Court of Appeals of Virginia, arguing that the circuit court erred in denying his motion to suppress and in finding the evidence sufficient to convict him of possession with intent to distribute, rather than mere possession. On September 14, 2011, the Court of Appeals refused to consider the denial of the suppression motion, ruling that Oprisko "failed to provide an adequate record for determination of the issue" because he had not provided

the search warrant or supporting affidavit in the record. It found the evidence sufficient to support a conviction for possession with intent to distribute. On appeal to this Court, Oprisko challenged only the sufficiency of the evidence, and we refused the petition on May 25, 2012. His conviction became final 90 days later, on August 23, 2012.[1]

Meanwhile, on January 6, 2012, the Supreme Court of the United States had granted certiorari in *Florida v. Jardines*, 569 U.S. 1, __, 133 S. Ct. 1409, 1413 (2013), addressing "whether using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a 'search' within the meaning of the Fourth Amendment." On March 26, 2013, the Court held that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at __, 133 S. Ct. at 1417-18.

On May 23, 2013, Oprisko filed a petition for a writ of habeas corpus in the circuit court, alleging that *Jardines* is "retroactively applicable to cases on collateral review," and that *Jardines* confirmed that the search of his home was invalid. He contended that *Jardines* was retroactive because it did not announce a "new" rule, but rather followed the earlier case of *United States v. Jones*, 565 U.S. 400, 409(2012), in that the Supreme Court's decision in *Jardines* "hinged on the basis of a citizen's property rights." Oprisko also requested a "plenary hearing" to allow him to "present testimony and exhibits in support of his habeas corpus

---

[1] A conviction becomes final for retroactivity analysis "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed." *Mueller v. Murray*, 252 Va. 356, 362, 478 S.E.2d 542, 546 (1996). Rule 13.1 of the Rules of the Supreme Court of the United States provides that a petition seeking review of the decision of a state court of last resort must be filed within 90 days.

3

petition." The Director of the Department of Corrections moved to dismiss, arguing primarily that *Jardines* did not apply retroactively because it announced a new constitutional rule.[2]

After a phone conference with the parties, on July 1, 2015 the habeas court dismissed Oprisko's petition, holding that "it need not determine whether *Florida v. Jardines* would alter its suppression ruling in the instant case because *Jardines* introduced a new rule and is not retroactive." It also held that a plenary hearing was unnecessary because the claim could be decided on the record.

Oprisko appealed. This Court granted Oprisko an appeal on the issues of whether the habeas court erred in ruling that *Jardines* did not apply retroactively and in denying his request for a plenary hearing.

ANALYSIS

A. Retroactivity of *Florida v. Jardines*

When a habeas court dismisses a "petition based upon a review of the pleadings without an evidentiary hearing, we review the decision to dismiss the petition *de novo*." *Zemene v. Clarke*, 289 Va. 303, 307, 768 S.E.2d 684, 686 (2015) (reviewing *de novo* a habeas petition alleging denial of effective assistance of counsel). Whether a rule applies retroactively is a pure question of law. *Mays v. United States*, 817 F.3d 728, 732 (11th Cir. 2016) (the issue of retroactivity under *Teague v. Lane*, 489 U.S. 288 (1989) is a question of law); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 893 (1st Cir. 2010) (same); *State v. Febles*, 115 P.3d 629, 632 (Ariz. Ct. App. 2005) (same); *Taylor v. Commonwealth*, 44 Va. App. 179, 184, 604 S.E.2d 103, 105 (2004).

> In *Teague v. Lane*, 489 U.S. 288 (1989), the [United States] Supreme Court stated
> that, on habeas corpus review, constitutional error must be evaluated together

_____

[2] Given our holding on this issue, we need not address the Director's other arguments.

4

with the interests of comity and finality. Based on these multiple considerations, a Supreme Court decision articulating a "new" constitutional rule of criminal procedure generally will not be applied to a conviction which has become final before the rule is announced.

*Mueller v. Murray*, 252 Va. 356, 361, 478 S.E.2d 542, 546 (1996) (citing *Teague*, 489 U.S. at 308, 310).

"[A] case announces a 'new' rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. Thus, we must (1) determine the date on which the defendant's conviction became final; (2) "survey the legal landscape" as it existed on that date "to determine whether existing constitutional precedent compelled the conclusion which the defendant sought"; and (3) decide whether a rule, even though "new," falls within one of the two exceptions to the retroactivity principle. *Mueller*, 252 Va. at 361-62, 478 S.E.2d at 546; *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). Here, we need not advance our analysis to the third step because Oprisko does not claim that either exception applies.[3]

As discussed above, Oprisko's conviction became final on August 23, 2012, ten months before *Jardines* was announced on March 26, 2013. Therefore, we must survey the legal landscape as it existed on August 23, 2012 to determine if then-existing constitutional precedent compelled the conclusion that detectives' use of a drug-sniffing dog on a homeowner's porch constituted a search within the meaning of the Fourth Amendment.

"A rule is not compelled by existing precedent if those decisions merely inform or control the analysis of the petitioner's claim." *Mueller*, 252 Va. at 362, 478 S.E.2d at 546 (citing *Saffle*

---

[3] "The first exception applies to those rules that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," and "*Teague*'s second exception permits the retroactive application of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Gilmore v. Taylor*, 508 U.S. 333, 345 (1993) (internal quotation marks and citations omitted).

*v. Parks*, 494 U.S. 484, 491 (1990)).  "Rather, a rule is compelled by existing precedent only if a contrary conclusion would have been *objectively unreasonable*."  *Id.* (emphasis in original).  "To put it differently, . . . a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.  And a holding is not so dictated . . . unless it would have been apparent to all reasonable jurists."  *Chaidez v. United States*, 568 U.S. __, __, 133 S. Ct. 1103, 1107 (2013) (citations and internal quotation marks omitted) (emphasis in original).

This "'new rule principle . . . validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions.'" *Mueller*, 252 Va. at 362, 478 S.E.2d at 546 (quoting *Butler v. McKellar*, 494 U.S. 407, 414 (1990)).  "For purposes of 'new' rule analysis, the scope of the rule under examination is defined as the narrowest principle of law actually applied to resolve the issue presented."  *Id.*

Here, the narrowest principle of law needed to resolve the issue is whether use of a drug-sniffing dog on a homeowner's porch is a search within the meaning of the Fourth Amendment. *See Jardines*, 569 U.S. at __, 133 S. Ct. at 1413.  On August 23, 2012, when Oprisko's conviction became final, there was no controlling precedent on this specific issue, but rather only precedent that addressed component parts thereof.

There was precedent establishing that government use of drug-sniffing dogs should be evaluated by reference to an individual's reasonable, legitimate expectation of privacy as established in *Katz v. United States*, 389 U.S. 347, 351 (1967).  *Katz* held that "the Fourth Amendment protects people, not places," and turned on what "an individual seeks to preserve as private," stating that "the premise that property interests control the right of the Government to search and seize has been discredited."  389 U.S. at 351, 353.  *See also United States v.*

6

*Chadwick*, 433 U.S. 1, 7 (1977) (same). "Official conduct that d[id] not 'compromise any legitimate interest in privacy' [was] not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 406, 408 (2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 n.22 (1984)) (discussing seizure of a package containing drugs and search of a cabin used by a burglar). Because "any interest in possessing contraband [could not] be deemed 'legitimate,' . . . government conduct that *only* reveal[ed] the possession of contraband 'compromise[d] no legitimate privacy interest.'" *Id.* (emphasis in original); *see also United States v. Place*, 462 U.S. 696, 707 (1983) (treating a canine sniff as "sui generis" because it "discloses only the presence or absence of narcotics, a contraband item").

In *Place*, 462 U.S. at 707, the United States Supreme Court explained that, although an individual has a "privacy interest in the contents of personal luggage that is protected by the Fourth Amendment," a canine sniff of that luggage "did not constitute a 'search' within the meaning of the Fourth Amendment" because a canine sniff "does not expose noncontraband items that otherwise would remain hidden from public view" and "discloses only the presence or absence of narcotics." Subsequently, in *Caballes*, 543 U.S. at 409, the Court reaffirmed this logic and applied it to a canine sniff conducted at a lawful traffic stop, holding that such action "does not implicate legitimate privacy interests." *See also United States v. Reed*, 141 F.3d 644, 648-49 (6th Cir. 1998) (citing *Chadwick* and *Place* to conclude that a canine sniff within a private residence "does not constitute a 'search' within the meaning of the Fourth Amendment"). Thus, there was precedent that use of a drug-sniffing dog did not convert otherwise legal activity into a constitutional violation.

There was also precedent addressing the doctrine of implied consent to enter upon the curtilage of private property. "A license may be implied from the habits of the country." *McKee*

7

*v. Gratz*, 260 U.S. 127, 136 (1922).   In this country, "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers for all kinds of salable articles." *Breard v. City of Alexandria*, 341 U.S. 622, 626 (1951).  And "[w]hen law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469 (2011).  Thus, this Court has held that

> a resident of a dwelling impliedly consents to a police officer entering the curtilage to contact the dwelling's residents.  This implied consent has the effect of deeming such an entry into the curtilage a reasonable intrusion into an area otherwise protected by an expectation of privacy under the Fourth Amendment. Implied consent can be negated by obvious indicia of restricted access, such as posted "no trespassing" signs, gates, or other means that deny access to uninvited persons.

*Robinson v. Commonwealth*, 273 Va. 26, 34-35, 639 S.E.2d 217, 222 (2007) (citations omitted).

Based on this legal landscape at the time of Oprisko's conviction, numerous federal courts of appeal and state courts of last resort had concluded that use of a drug-sniffing dog on a person's private property did not violate the Fourth Amendment.[4]

In *Jardines*, which involved use of a drug-sniffing dog within the curtilage of a home, the Supreme Court departed from the reasonable expectation of privacy analysis used to evaluate canine sniffs in *Caballes* and *Place* to conduct its analysis through a property-rights lens. *Jardines*, 569 U.S. at __, 133 S. Ct. at 1415, 1417 ("Since the officers' investigation took place

---

[4] *See, e.g.*, *United States v. Brock*, 417 F.3d 692, 696-97 (7th Cir. 2005) (holding that a canine sniff is not a search when police are lawfully present in the area where it takes place); *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998) (where the canine team was lawfully present inside a home, the canine sniff itself was not a Fourth Amendment search); *see also State v. Guillen*, 223 P.3d 658, 663 (Ariz. 2010) (collecting cases and concluding that, given the conflicting case law regarding canine sniffs of private homes, "any supposed flagrancy of [such conduct] was de minimis") (internal quotation marks omitted).  *But see United States v. Thomas*, 757 F.2d 1359, 1366-67 (2d Cir. 1985) (canine sniff of doorway outside defendant's apartment was a search because it impermissibly intruded on his legitimate expectation that the contents of his closed apartment would not be sensed from outside his door).

in a constitutionally protected area, we turn to the question of whether it was accomplished through an unlicensed intrusion.")  It then addressed the doctrine of implied consent, holding that it is "limited not only to a particular area but also to a specific purpose," and that the decision to conduct a "knock and talk" with a drug-sniffing dog was objective proof that the officers' purpose was to conduct an unreasonable search.  *Id*. at __, 133 S. Ct. at 1416-17.

The Court stated:

> The State points to our decisions holding that the subjective intent of the officer is irrelevant.  But those cases merely hold that *a stop or search that is objectively reasonable* is not vitiated by the fact that the officer's real reason for making the stop or search has nothing to do with the validating reasons.  Thus, the defendant will not be heard to complain that although he was speeding the officer's real reason for the stop was racial harassment.  Here, however, the question before the court is precisely whether the officer's conduct was an objectively reasonable search.  As we have described, *that depends upon whether the officers had an implied license to enter the porch, which in turn depends upon the purpose for which they entered.*  Here, their behavior objectively reveals a purpose to conduct a search, which is not what anyone would think he had license to do.

*Jardines,* 569 U.S. at __, 133 S. Ct. at 1416-17 (emphases added; internal citations omitted).

The Court concluded that because "the traditional property-based understanding of the Fourth Amendment" is still valid, a reasonable expectation of privacy test, as used in *Caballes* and *Place*, "is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas."  *Id*. (citing *Jones*, 565 U.S. at 406 n.3).  It appears that the Supreme Court broke new ground in *Jardines* by determining that, based on a property-rights analysis, use of a drug-sniffing dog within the curtilage revealed an improper purpose for the intrusion onto the curtilage, which made the officer's conduct objectively unreasonable.

Despite this cite to *Jones* as authority, the result in *Jardines* was not dictated solely by *Jones* because the cases are distinguishable in two regards: the nature of the information obtained and the existence of an issue regarding implied consent.  First, the tracker in *Jones* monitored the

9

defendant's every movement, providing the government evidence of both his legal and illegal activities. 565 U.S. at 403. *Jones* did not state that an intrusion onto an individual's property to gather only information about *illegal* activity was an unconstitutional search. *See id*. at 404-05. Given the Supreme Court's earlier rejection of a privacy interest in contraband or illicit activities—including in a home, *see Jacobsen*, 466 U.S. at 123-24 & n.22—the constitutionality of a physical intrusion onto private personal property or the curtilage of a home to gather information about only illegal activities was unresolved prior to *Jardines*.

Second, *Jones* did not address the implied consent at issue in *Jardines* because it did not concern the entrance onto the curtilage of a home and there was no dispute that the tracker was placed without consent. *See generally Chaidez*, 568 U.S. at __, 133 S. Ct. at 1108-10 (explaining that when a prior "conclusion allowed [the Court] to avoid another, more categorical question" that would have controlled the case at bar, and the "non-decision left the state and lower federal courts to deal with the issue" that is now before the Court, its decision will be a new rule).

The fact that several federal courts of appeal and state courts of last resort had concluded that use of a drug-sniffing dog at a residence or within the curtilage thereof did not constitute a Fourth Amendment search bolsters the conclusion that *Jardines* announced a new rule. It suggests that *Jardines* was not "compelled by existing precedent" because we cannot say that all of the courts that reached a "contrary conclusion" were "objectively unreasonable." *Mueller*, 252 Va. at 362, 478 S.E.2d at 546. Similarly, it shows that the rule was not "apparent to all reasonable jurists," so we cannot say that it was dictated by precedent existing at the time Oprisko's conviction became final. *Chaidez*, 568 U.S. at __, 133 S. Ct. at 1107. Rather, this appears to be a situation in which "the 'new rule' principle" requires the validation of

10

"reasonable, good-faith interpretations of existing precedents made by [lower] courts even though they are shown to be contrary to later decisions." *Mueller*, 252 Va. at 362, 478 S.E.2d at 546 (internal quotation marks omitted).

Therefore, because the controlling legal landscape when Oprisko's conviction became final did not dictate that use of a drug-sniffing dog within the curtilage of private property was a search within the meaning of the Fourth Amendment, and neither of the exceptions recognized in *Teague* applies, the habeas court did not err in ruling that *Jardines* did not apply retroactively to Oprisko's conviction.

### B.  Plenary Hearing

Oprisko argues that the habeas court erred in denying his request for a plenary hearing because the allegations regarding his illegal detainment could not be fully determined on the record where a factual dispute existed regarding whether the search warrant was supported by anything other than the canine sniff.

We review a habeas court's decision to deny an evidentiary hearing for an abuse of discretion. *Yeatts v. Murray*, 249 Va. 285, 290, 455 S.E.2d 18, 20 (1995).  A court abuses its discretion if the record does not support its action or its decision was based on erroneous legal conclusions. *Grattan v. Commonwealth*, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009).

Under Code § 8.01-654, a habeas court may grant an evidentiary hearing, but subsection (B)(4) explicitly provides that it is not necessary if "the allegations of illegality of the petitioner's detention can be fully determined on the basis of recorded matters." *See also Arey v. Peyton*, 209 Va. 370, 372, 164 S.E.2d 691, 693 (1968) (recognizing that a court should refuse a habeas petitioner's request for an evidentiary hearing if "the merits of the allegations may be determined by reference to the record of previous judicial proceedings").

11

Oprisko's sole claim was that his conviction violated *Jardines*, and he sought a hearing to produce evidence that the warrant was supported only by the canine sniff. However, the question before the habeas court was a pure issue of law—whether *Jardines* applies retroactively. *Matherly*, 817 F.3d at 119. Because the habeas court correctly concluded that it did not, evidence regarding the warrant was irrelevant. The only fact relevant to the retroactivity determination was the date on which Oprisko's conviction became final, which was in the record, uncontested, and indisputably triggered application of the retroactivity doctrine explained above. Accordingly, the habeas court did not err in determining that Oprisko's habeas claim could be resolved solely on the recorded matters and a plenary hearing was unnecessary.

CONCLUSION

We hold that *Jardines* announced a new rule of constitutional law because it was not dictated by precedent, and therefore it does not apply retroactively to convictions such as Oprisko's that became final prior to March 26, 2013. Thus, the habeas court did not err in so ruling. Further, because this was a pure question of law, the habeas court did not abuse its discretion in denying Oprisko's request for a plenary hearing and deciding the matter on documents in the record. Accordingly, we will affirm the judgment of the circuit court.

*Affirmed.*