UPON A REHEARING EN BANC
BUMGARDNER, Judge.
A panel of this Court reversed David Toran Peeples’s convictions of aggravated malicious wounding and use of a firearm in the commission of the aggravated malicious wounding. See Peeples v. Commonwealth, 28 Va.App. 360, 504 S.E.2d 870 (1998). Upon rehearing en banc, we conclude that the trial court did not err by excluding the expert witness’ testimony regarding Peeples’s mental state. Accordingly, we affirm the convictions.
The victim and Richard Harvey were walking along the street when the defendant and a friend drove by, parked, got out, and approached them. The defendant asked the two if they wanted to purchase a “blunt,” which is a cigar filled with marijuana. They each gave the defendant a dollar, and the defendant rolled a blunt. The defendant told the victim and Harvey that he wanted them to share it with him. When they declined, the defendant refused to give the blunt to them. The victim and Harvey asked for their money back. They exchanged words, the victim grabbed the blunt, and the defendant went home.
The defendant returned a few minutes later, and the argument resumed. As the victim and the defendant walked into an alley to light the blunt, the defendant stepped in front of the victim and, as they stood face to face, pulled out a gun. The victim put his hands up in the air, but the defendant shot *629 him twice, once in each leg. The victim fell to the ground as Harvey, who was standing nearby, asked the defendant what he was doing. The defendant replied, “Y’all want to fuck with me?” and chased Harvey down the street. The defendant returned quickly to the victim, who was lying on the ground, and shot him three more times, twice in the abdomen and once in the head. The defendant ran off when a woman screamed, but he did not return home that day or contact the police until two and a half weeks later.
The victim survived but lost sight in his right eye. The surgeon who operated on him testified that the shots to his legs had a “straight-through trajectory,” and the shots to his abdomen and head had a “downward trajectory.” The doctor said that the shot to the head was “fired from a point to the right and behind” and it appeared to come from behind the ear and exit through the nose.
The defendant testified in his own defense. He maintained that the victim and Harvey asked him to change a twenty-dollar bill. When the defendant displayed his money while making change for them, the two said they were going to take it. Harvey “acted like he had a gun.” The defendant said that he was scared, thought he was being robbed, and believed he would be shot because the victim had a reputation for violence and other people had been robbed in the neighborhood. The defendant said he “kind of panicked, you know. I started shooting. I’m not sure how many shots were fired.” When asked why he shot the victim if he thought Harvey had the gun, the defendant responded that he was scared and “never aimed at anybody.”
At trial, the defendant proffered that Dr. Michelle Nelson, a psychologist, would testify that the defendant was mildly mentally retarded and that because of “the particular way that [his] mind is affected, he has extreme difficulty correctly interpreting social situations. He tends to miss the point exactly what is happening and reacts inappropriately.” [1] The *630 trial court granted the Commonwealth’s motion to exclude the expert testimony from the guilt phase of the trial.
The jury convicted the defendant of aggravated malicious wounding and the use of a firearm in the commission of that offense. The trial court imposed sentence because the defendant was a juvenile. See Code § 16.1-272. It sentenced him to twenty-five years in the penitentiary for aggravated malicious wounding and three years for use of a firearm. On appeal, the defendant argues that the trial court erred in excluding Dr. Nelson’s testimony because it supported his contention that he acted in the heat of passion, thereby rebutting the presumption of malice, and supported his evidence that he acted in self-defense.
When the defendant asserted the defenses of heat of passion and self-defense, he conceded he shot the victim. He raised the issues of whether he acted while reasonably provoked by fear or rage and whether he reasonably feared death or serious bodily injury. The defendant argues that his point of view, state of mind, and perception of events were relevant to the issues of reasonable provocation and reasonable fear. He contends that Dr. Nelson’s testimony was admissible to prove his mental condition and his perception of the situation that he confronted.
We find the rationale of Stamper v. Commonwealth, 228 Va. 707, 324 S.E.2d 682 (1985), applies to the particular evidence proffered in the instant case. Stamper proffered “psychiatric testimony to prove that he was manic-depressive, in a manic state on the date of the offense, and consequently incapable of forming the intent to distribute” marijuana. Id. at 715-16, 324 S.E.2d at 687. In upholding the trial court’s rejection of the evidence, the Supreme Court noted that some jurisdictions admit expert testimony of a defendant’s mental state, short of insanity, to show diminished capacity. Other *631 jurisdictions admit it as circumstantial evidence that the requisite specific intent did not exist. The Court specifically declined to adopt a diminished capacity theory of criminal responsibility, which it characterized as a fundamental change in the common law theory of criminal responsibility.
The Court explained its fundamental reason for excluding evidence of a defendant’s mental state, short of insanity: the state of the art in medicine and psychiatry is not sufficiently stable and established to form the basis for determining criminal responsibility. Unless a person falls outside the borderline demarcating legal sanity, he possesses sufficient reason to be responsible for his crimes.
There is, however, a more fundamental reason for the exclusion of such evidence. The state of knowledge in the fields of medicine and psychiatry is subject to constant advance and change. The classifications and gradations applied to mental illnesses, disorders, and defects are frequently revised. The courts cannot, and should not, become dependent upon these subtle and shifting gradations for the resolution of each specific case. Instead, the common law, many years ago, fixed a stable and constant standard of mental competence as the criterion for the determination of criminal responsibility. A person whose mental state falls outside the borderline drawn by that standard is deemed legally insane. All persons inside that borderline are “presumed to be sane, and to possess a sufficient degree of reason to be responsible for [their] crimes.” For the purposes of determining criminal responsibility a perpetrator is either legally insane or sane; there is no sliding scale of insanity. The shifting and subtle gradations of mental illness known to psychiatry are useful only in determining whether the borderline of insanity has been crossed. Unless an accused contends that he was beyond that borderline when he acted, his mental state is immaterial to the issue of specific intent. Accordingly, we hold that evidence of a criminal defendant’s mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the *632 issue of guilt. The trial court committed no error in excluding it at the guilt phase of the trial.
Stamper, 228 Va. at 716-17, 324 S.E.2d at 688 (alteration in original) (citations omitted).
In Smith v. Commonwealth, 239 Va. 243, 389 S.E.2d 871, cert. denied, 498 U.S. 881, 111 S.Ct. 221, 112 L.Ed.2d 177 (1990), the defendant was charged with capital murder. He offered expert testimony to show that he suffered from alcohol dependence and borderline personality disorder, had the ability to premeditate, but could not follow through on his intentions. The defendant argued that Stamper did not control because the expert testimony of his inability to premeditate was the equivalent of the accepted defense of inability to premeditate because of voluntary intoxication. Smith asserted it would be “ ‘barbarous and insensible ... to extend a more lenient legal rule to the case of a drunkard ... than to the case of a poor demented creature.’ ” Id. at 260, 389 S.E.2d at 880 (quoting State v. Noel, 102 N.J.L. 659, 133 A. 274, 285 (1926)). The Court rejected the argument and reiterated the holding in Stamper that the state of knowledge in the fields of medicine and psychiatry was subject to constant change, and the classifications and gradations were too subtle and shifting. See id.
In Jenkins v. Commonwealth, 244 Va. 445, 423 S.E.2d 360 (1992), the defendant was also charged with capital murder. He offered evidence that he had been physically and sexually abused as a child on the crucial question of his state of mind for both degree of homicide and eligibility for the death penalty. Specifically he offered evidence of a clinical psychologist that he suffered from “child sexual abuse accommodation syndrome.” See id. at 456, 423 S.E.2d at 367. The expert would testify that the defendant fit the behavior patterns and thought processes of one with that syndrome. The trial court had excluded the evidence as violating Stamper. The Supreme Court affirmed the conviction but did not need to address what it called “the Stamper principle” because the Court found the evidence insufficient as a matter of law to *633 raise a manslaughter defense. See id. at 457, 423 S.E.2d at 367.
This Court applied the principle of Stamper and Smith in Bowling v. Commonwealth, 12 Va.App. 166, 403 S.E.2d 375 (1991). Bowling sought to introduce psychiatric evidence of his mental state at the time of the offense. He offered evidence that he functioned at the lower limits of the adult intelligence range and argued that evidence of diminished capacity was relevant to the elements of premeditation and deliberation. He did not put his sanity at issue or present evidence that he was legally insane. This Court repeated the Stamper principle that the state of knowledge was not sufficiently stable and constant and rejected the evidence holding, “in the absence of any claim of insanity, we find that the trial court did not err in denying Bowling’s motion to introduce psychiatric evidence as to his mental state at the time of the offense.” Id. at 173, 403 S.E.2d at 379.
The principle enunciated in Stamper resists turning to the evolving field of psychiatry when determining individual criminal responsibility. The Court would not take the determination of criminal responsibility from a stable and constant standard established by common law and place it under the discipline of psychiatry. The Court in Stamper focused on the unsuitability of psychiatry for determining criminal responsibility in the absence of an insanity defense. That principle applies to the expert testimony proffered in the instant case.
The defendant offered expert opinion that he was likely to interpret social situations differently than most people, that he had problems with impulse control, and that he was likely to jump to conclusions. He offered the opinions to support two defenses: that he acted in heat of passion upon reasonable provocation and not with malice; that he acted in self-defense upon reasonable belief that he was in danger of death or serious bodily harm. The defenses either excuse or reduce the degree of criminal responsibility. In one case, heat of passion, the defense reduces the crime from murder to manslaughter. In the other, self-defense, the defense excuses *634 or justifies the resort to violence and absolves of all criminal responsibility.
An opinion that the defendant suffered a mental disability that rendered him vulnerable to misunderstanding a social situation is the type of gradation or classification of the defendant’s mental state too subtle and shifting to form the basis for excusing his use of deadly force. In this instance, the expert’s opinion evidence was not relevant to prove that the defendant acted to defend himself from a threat of imminent bodily harm, or that he was provoked or acted in the heat of passion. Though this is not to say that expert testimony is never admissible in support of the defenses of heat of passion or self-defense.
. The evidence offered by the defendant was inadmissible for a second reason. Taken in the light most favorable to the defendant, the evidence established neither defense for which he offered it. The defendant testified that he thought he was being robbed. He knew of the victim’s reputation for violence, he was in a bad neighborhood, and he saw Harvey “reach” toward his waistband. He never saw a weapon, and the perceived threat did not come from the victim. It came from Harvey who was on the other side of the defendant. The defendant’s version of the events did not support a claim, that he acted in heat of passion upon reasonable provocation, nor did it support a claim that he acted in self-defense upon reasonable fear of death or serious bodily injury.
To justify the use of deadly force, the defendant must have reasonably feared death or serious bodily injury from his victim, and there must have been an overt threat. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 292 (1977) (mere reaching down toward his boot where defendant knew victim kept a knife was not such an overt act as would excuse the homicide). The defendant’s evidence did not support a finding that he reasonably feared death or serious bodily injury from his victim and provided no evidence of an overt threat from the victim.
*635 Furthermore, the force employed must be proportional to the threat posed. “[T]he amount of force used must be reasonable in relation to the harm threatened.” Diffendal v. Commonwealth, 8 Va.App. 417, 421, 382 S.E.2d 24, 25 (1989) (citations omitted). The defendant first shot the victim while he was standing, next shot him in the abdomen and the chest while the victim lay on the ground, and finally shot him in the back of the head as he remained on the ground. The threat as described by the defendant did not justify the degree of force he used; the force exceeded any that could be excused or justified.
The defendant shot the victim first in the legs and then while on the ground in response to Harvey reaching toward his waistband. His action was not reasonable and was insufficient to raise either defense asserted: neither the defense of slaying in a heat of passion upon reasonable provocation, nor the defense of slaying in self-defense upon reasonable belief that it was necessary under the facts as they appeared to him. Without evidence to establish a defense, expert opinion in aid of it was properly excluded.
For the foregoing reasons, we affirm the trial court.

Affirmed.

. Dr. Nelson did testify at sentencing that the defendant was cognitively impaired and was mentally retarded with an IQ of 55. She said, *630 "Peeples is likely to interpret social situations differently than most people.... [H]e has problems with impulse control, he's likely to jump to conclusions that other people wouldn’t necessarily.jump to.”