COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bumgardner and Kelsey
Argued at Alexandria, Virginia


RUSSELL DALE FUNK, SR.
                                MEMORANDUM OPINION* BY
v.    Record No. 1821-02-4    JUDGE RUDOLPH BUMGARDNER, III
                                      JULY 8, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
                    John E. Wetsel, Jr., Judge

        S. Jane Chittom, Appellate Defender (Felipita
        Athanas, Appellate Counsel; Public Defender
        Commission, on briefs), for appellant.

        Stephen R. McCullough, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General;
        John H. McLees, Senior Assistant Attorney
        General, on brief), for appellee.


     A jury convicted Russell Dale Funk, Sr. of the malicious

wounding of his six-week-old son.  He maintains the trial court

erred in excluding expert testimony, in denying his motion for a

continuance, and in finding the evidence sufficient to prove

intent.  Finding no error, we affirm.

     The defendant was caring for the six-week-old victim for

two days while the mother was hospitalized.  He took the child

to see the mother in the hospital, but the child's appearance so

alarmed a nurse on duty at the hospital that she took the child

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

to the emergency room.  The child was in severe shock, had bruises on his head, chest, arm and legs, and was bleeding in his head.  The emergency room doctor testified that "severe shaking" caused the trauma because the victim had no fractured bones.  After transfer to the University of Virginia, the attending specialist described the injuries as widespread brain damage with significant bleeding and swelling in the brain.  The doctor determined the victim suffered from non-accidental trauma, "shaken baby syndrome," caused by severe force.  The injuries were too widespread to have been caused by any single blunt trauma and were inflicted during the two-day period that the defendant cared for the child.  They would leave the victim severely retarded.

The defendant was mentally retarded with an IQ of 65.  He maintained the injury was an accident, but gave conflicting statements to the police.  He first denied shaking the victim and claimed a three-year-old child hit the victim with a toy.  Later, the defendant admitted he shook the victim three times while holding his shoulders and he might have been "too rough."

The defendant filed a motion that he intended to introduce "evidence of an insanity defense and/or a defense of lack of mens rea."  The Commonwealth responded with a motion in limine to exclude expert testimony offered to show the defendant's lack of mens rea or diminished capacity.  The trial court considered the motion in limine immediately before the trial began.  The

- 2 -

defendant proffered the report of Bernard J. Lewis, Ph.D., a licensed clinical psychologist, who had performed a parental capacity and psychological evaluation for the Department of Social Services.  His report concluded:

> The results of this evaluation suggests any harm Mr. Funk may have inflicted upon his infant child, Jesse, was likely due to a lack of understanding of the fragility of infants, rather than to any intentional or grossly careless act.  Mr. Funk simply does not understand how easily infants can be harmed, and it is quite conceivable that he would play with a one-month-old child in the same manner he would play with a one-year-old child.

The trial court ruled the opinion was not admissible under Stamper v. Commonwealth, 228 Va. 707, 717, 324 S.E.2d 682, 688 (1985).  The trial court also ruled the doctor would be permitted to testify on the issue of the reliability of the defendant's confession within the limits established in Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002).

The defendant argues Stamper did not apply because the evidence was not evidence of diminished capacity.  He maintains the evidence showed he had limited mental capacity and a limited understanding of the consequences of his conduct.  The evidence did not relate to sanity but to the defendant's ignorance due to his limited mental capacity and limited understanding of how to handle infants.

- 3 -

"The admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion." Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992). In the absence of an insanity plea, "evidence of a criminal defendant's mental state at the time of the offense is . . . irrelevant to the issue of guilt." Stamper, 228 Va. at 717, 324 S.E.2d at 688.

In Peeples v. Commonwealth, 30 Va. App. 626, 519 S.E.2d 382 (1999) (en banc), the defendant was convicted of aggravated malicious wounding. He argued the trial court erred in excluding expert testimony that due to his mental retardation "'he has extreme difficulty correctly interpreting social situations . . . and reacts inappropriately.'" Id. at 629, 324 S.E.2d at 383 (citation omitted). He claimed the evidence was "admissible to prove his mental condition and his perception of the situation that he confronted." Id. at 630, 519 S.E.2d at 384. This Court held the evidence was inadmissible because the testimony that the defendant misunderstood social situations was intended to reduce his criminal responsibility and was not relevant to prove a defense. Id. at 634, 519 S.E.2d at 385.

In this case, the defendant sought to introduce opinion testimony for the same reasons attempted in Peeples. He sought to establish that he did not fully comprehend the fragility of the victim or the consequences of his conduct due to his mental

- 4 -

retardation.  Absent an insanity defense, the trial court cannot consider expert opinion of a defendant's mental state.  "[T]here is no sliding scale of insanity."  Stamper, 228 Va. at 717, 324 S.E.2d at 688.  The trial court did not err in excluding the proffered opinion.

The defendant moved for a continuance after the trial court granted the motion in limine limiting the expert's testimony. The defendant explained that he needed a continuance to "make a proper presentation in open Court that will enable the Defendant to demonstrate his mental abilities."  The trial court denied a continuance.

"Whether to grant or deny a continuance of a trial is a matter that lies within the sound discretion of the trial court, and its ruling will not be reversed on appeal unless it is plainly wrong."  Cardwell v. Commonwealth, 248 Va. 501, 508, 450 S.E.2d 146, 151 (1994).  "[A]bsent a showing of prejudice to a defendant by the denial of a continuance, an appellate court will not find that a trial court abused its discretion."  Id. at 509, 450 S.E.2d at 151.

The defendant made the motion for a continuance in response to a pretrial evidentiary ruling just as the jury trial was scheduled to begin.  The denial was typical of last minute preliminaries that the defendant could anticipate.  He was not entitled to regroup after an adverse ruling disrupted his preferred strategy.  The defendant did call the expert as a

witness, and he testified about the defendant's IQ and his intellectual functioning. The defendant offered no clear explanation at trial or on appeal for needing the continuance or for being harmed without it. The trial court was within the limits of its discretion when it denied a continuance.

The defendant maintains the Commonwealth failed to prove he intended to maim, disfigure, disable, or kill the victim. "The specific intent to commit [a crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven." Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 674 (1995). See also Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 764 (2001) (intent may be inferred from defendant's conduct and statements).

The victim, a six-week-old child, suffered permanent brain damage from non-accidental, severe force. He was under the sole care of the defendant, who initially blamed the injury on a toy. The defendant later admitted he shook the victim three times and may have been too rough. The jury heard and saw the officer recount the defendant's statement and demonstration of how he shook the child. The jury was not required to accept the defendant's contention that he did not intend to hurt the victim or that the injury was an accident. Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991) (defendant's false statements are evidence of guilt).

The jury could reasonably infer from the violence necessary to cause such severe and extensive injury that the defendant intended that which he accomplished. The jury determines the inferences to be drawn from proven facts, "provided the inferences are reasonably related to those facts." Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 568 (1976). "'In determining the probable consequences of an aggressor's actions and his or her intent to achieve those consequences, the comparative weakness of the victim and the strength of the aggressor may be considered.'" Webber v. Commonwealth, 26 Va. App. 549, 565, 496 S.E.2d 83, 90 (1998) (grown man striking 29-day-old infant sufficient to prove malice for second-degree murder) (quoting Campbell v. Commonwealth, 12 Va. App. 476, 485, 405 S.E.2d 1, 5 (1991) (en banc)).

"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The evidence permitted a finding beyond a reasonable doubt that the defendant intended to maim, disfigure, disable, or kill the victim. Accordingly, we affirm the conviction.

Affirmed.