PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Russell, JJ., and Millette and Mims, S.JJ.

ANDREW SCHMUHL

v.  Record No. 211114

HAROLD CLARKE, DIRECTOR

OPINION BY
JUSTICE CLEO E. POWELL
DECEMBER 14, 2023

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Andrew Schmuhl ("Schmuhl") appeals the denial of his petition for a writ of habeas corpus in which he claimed that his trial counsel was ineffective due to an alleged misunderstanding of the law regarding the admissibility of mental state evidence which resulted in his inability to present crucial expert testimony regarding his sanity at the time that he committed his crimes.

I. BACKGROUND

A. Pretrial

On November 9, 2014, Schmuhl posed as a law enforcement agent and gained entry to his wife's former employer's home. During the home invasion, the details of which can be found in *Schmuhl v. Commonwealth*, 69 Va. App. 281 (2018) (hereafter referred to as *Schmuhl I*), Schmuhl gravely injured the two occupants of the home before fleeing when one of the occupants was able to activate a panic alarm. On May 18, 2015, Schmuhl was indicted on two counts of abduction for pecuniary benefit, two counts of aggravated malicious wounding, two counts of use of a firearm in the commission of a felony, and one count of burglary.

Schmuhl's appointed counsel, Bradley Haywood ("Haywood") and Andrew Elders ("Elders") (collectively "trial counsel"), retained Dr. Eileen Ryan ("Dr. Ryan"), a psychiatrist, and Dr. Daniel Murrie ("Dr. Murrie"), a clinical and forensic psychologist, to evaluate

Schmuhl's sanity. After evaluating Schmuhl, Dr. Ryan concluded that he was suffering from an acute medication induced delirium at the time of the home invasion and, therefore, he was unable to understand the nature, character, and consequences of his actions.

As a result, Schmuhl's trial counsel gave notice that

> Schmuhl intends to assert at trial that his mental state at the time of the offense met the legal standard for insanity, and intends to present evidence, including expert testimony, in support of this defense. His mental state at the time of the offense resulted from the use of medication.

The Commonwealth moved to compel trial counsel to provide the materials required under Code § 19.2-169.5, including the results of any evaluations of Schmuhl. The Commonwealth further sought to have Schmuhl evaluated by its own mental health expert. In response, trial counsel explained that they were not raising an insanity defense; rather, they clarified that were raising "an involuntary intoxication defense." As part of their response, Schmuhl's trial counsel noted "that there is a lack of precedent interpreting [the statutes governing an insanity defense] in a case alleging involuntary intoxication" to explain why they gave notice about the nature of their defense.

On November 30, 2015, the trial court held a hearing on the motion to compel. At the hearing, trial counsel reiterated their position that they were raising an involuntary intoxication defense, which they believed to be distinct from an insanity defense. As they explained it, "there's no real reason to have a psychiatric evaluation by a different evaluator" with an involuntary intoxication defense because the intoxicant had already left Schmuhl's system by the time he could be evaluated. Schmuhl's trial counsel further asserted that such an evaluation, in the absence of an insanity defense, "would risk violating his constitutional rights including his right to counsel, his right to attorney-client privilege, [and his] Fifth Amendment right to be free from self-incrimination." They went on to explain that "the end game of this, of [an] involuntary

intoxication defense, if we win, my understanding is that Mr. Schmuhl will walk free, he would have no further obligation to the court, he would not be civilly committed."

The Commonwealth agreed that an involuntary intoxication defense was separate from an insanity defense. However, the Commonwealth argued that, under *Stamper v. Commonwealth*, 228 Va. 707 (1985), Schmuhl would be prohibited from putting on any expert testimony related to his mental status if he only raised an involuntary intoxication defense. The trial court indicated that it agreed with the Commonwealth. Trial counsel responded unequivocally that it was raising an involuntary intoxication defense, not an insanity defense. With regard to the applicability of *Stamper*, trial counsel requested additional time to brief that issue, which the trial court granted.

In a subsequent memorandum, Schmuhl's trial counsel argued that *Stamper* was inapplicable because it "fundamentally concerned the admissibility of expert testimony regarding defenses not recognized in Virginia" which were "offered in support of facts that by law were not in issue in the case." Specifically, they claimed that the defendant in *Stamper* was advocating for the recognition of a diminished capacity defense in Virginia. Trial counsel clarified that they were not seeking to use a diminished capacity defense; rather, they were raising an involuntary intoxication defense, which was recognized at common law. The Commonwealth responded by insisting that *Stamper* established a bright-line rule that "a defendant's mental health is not relevant to his guilt or innocence and is inadmissible."

After considering the parties' briefs, the trial court held a hearing to decide whether to allow Schmuhl to present mental health evidence at trial. During the hearing, the trial court stated that it was "not certain that *Stamper* controls the question of whether [trial counsel] can call a mental health expert." The Commonwealth conceded that this was a "complicated issue"

because, as the trial court noted, if the "proper predicate is laid, testimony about a Defendant's mental health might be relevant to an understanding of the impact of a medicine or a combination of medicines." However, the Commonwealth explicitly stated that it was not conceding that such evidence would be admissible in this case because it did not know the nature of the evidence that Schmuhl's trial counsel would be relying on. Trial counsel reiterated their position that *Stamper* was about the application of a diminished capacity defense and, therefore, it did not apply to evidence submitted in support of an involuntary intoxication defense. Further, trial counsel repeatedly declined requests from the trial court to proffer how they intended to use the mental health evidence. According to trial counsel, such a proffer would implicate their trial strategy. At the same time, trial counsel acknowledged that they might be wrong, but they "were the ones taking on the risk."

The trial court ruled that, without a proffer from trial counsel regarding how the mental state evidence would be used, it could not rule on that matter before trial. The trial court also noted that trial counsel had acknowledged that, by not making a proffer which would allow it to rule on the admissibility of the mental health evidence, "it puts them at risk of having evidence excluded in the middle of trial."

## B. Trial

At trial, after the Commonwealth put on its evidence, the trial court held a hearing outside of the presence of the jury to determine the admissibility of Schmuhl's expert testimony related to his mental health. Trial counsel proffered that Dr. Ryan would testify that Schmuhl was suffering from medication-induced delirium during the home invasion caused by an inappropriate combination of prescription medications. The Commonwealth objected, asserting that medication-induced delirium is not involuntary intoxication, it is a mental disease or defect,

4

and therefore Schmuhl was required to invoke an insanity defense. As trial counsel had not raised an insanity defense, the Commonwealth asserted that it was inappropriate to allow Dr. Ryan to testify about Schmuhl's mental state under *Stamper*.[1]

After considering the matter, the trial court entered an order prohibiting Schmuhl from presenting "expert psychiatric testimony on the affirmative defense of 'involuntary intoxication.'" At the same time, the trial court made clear that its order did not preclude Schmuhl from calling an expert to address "the toxicological effects of ingested medications," provided a proper foundation was laid. Trial counsel moved for reconsideration, which the trial court denied.

Schmuhl testified in his own defense and described all of the medications he was taking prior to the home invasion. He further claimed that he did not remember planning or conducting the home invasion. Dr. Ryan subsequently testified as an expert in toxicology and the pharmacological effects of medication. She testified about each of the medications Schmuhl claimed to have taken prior to the offense, how they affected the brain, and the possible side effects. Dr. Ryan was permitted to opine that certain drugs that Schmuhl was prescribed could affect a person's mental status and cause confusion, but she was not permitted to testify about reports of "psychotic reactions." The trial court explained that "psychosis is an insanity defense."

Outside of the presence of the jury, Schmuhl's trial counsel argued that an involuntary intoxication defense involves an altered mental state, which can include psychosis and/or medication induced delirium. They further claimed that they were also asserting an

---

[1] The Commonwealth conceded that Dr. Ryan could testify as an expert in toxicology and discuss the interaction of the various drugs that Schmuhl had been prescribed.

5

unconsciousness defense, which "does not question whether a defendant understands his actions or knows that they were wrong, but it rather precludes mens rea entirely." According to trial counsel, "[b]y precluding mens rea entirely, psychiatric testimony offered in support of an unconsciousness defense is not prohibited by [*Stamper*]." Trial counsel insisted "that delirium is an acknowledged predicate for the unconsciousness defense" and, therefore, they should be permitted to present expert psychiatric testimony to establish that Schmuhl was unconscious during the home invasion. The trial court ruled that, under *Stamper*, Dr. Ryan was not permitted to offer any "expert mental health testimony on the mental status" of Schmuhl. Trial counsel then made an extensive proffer of what Dr. Ryan's testimony would have been with regard to the psychological effects of the various medications Schmuhl was on at the time of the home invasion. After hearing the proffer, the trial court permitted Dr. Ryan to testify about the side effects of the medications that Schmuhl was on. However, the trial court explicitly stated that Dr. Ryan could not testify that the medications caused medication induced delirium or that Schmuhl was, in fact, involuntarily intoxicated.

When Dr. Ryan resumed her testimony, she testified that Schmuhl's behavior was consistent with someone who had taken the combination of medications that he was reportedly taking in the days leading up to the home invasion. She also elaborated on the toxicological effects of Schmuhl's prescribed medications, including impaired consciousness, paranoia, confusion, and detachment from reality. Dr. Ryan further testified about symptoms and effects of toxic polypharmacy, and conditions that can predispose a patient to be more susceptible to the litany of side effects she had previously discussed.

After both parties finished putting on their evidence, the trial court granted trial counsel's request for a jury instruction on involuntary intoxication. However, the trial court denied their

6

request for an instruction defining intoxication or on a defense of unconsciousness. After deliberating, the jury found Schmuhl guilty on all counts.

## C. The Appeal

On appeal, Schmuhl argued that the trial court erred in interpreting *Stamper* as barring "evidence of mens rea unless a defendant presents an insanity defense." *Schmuhl I*, 69 Va. App. at 299. According to Schmuhl, *Stamper* merely stood for the proposition that "the Commonwealth does not recognize the diminished capacity defense and reiterated that the *M'Naghten* rule continues to apply to insanity defenses." *Id.* at 301. The Court of Appeals, however, disagreed with Schmuhl's interpretation of *Stamper*, holding that the express holding of the case was that "the only way to negate mens rea with evidence of a defendant's mental state" is to plead insanity. *Id.* The Court of Appeals further held that involuntary intoxication "is recognized in the Commonwealth as an alternative basis for an insanity defense" as opposed to being a separate and distinct defense. *Id.* at 302. Regarding the unconsciousness defense, the Court of Appeals determined that any error by the trial court was harmless, as the "record reflects that appellant was not unconscious during the attack" because the evidence "shows he planned and completed the home invasion with precision, clarity, and control." *Id.* at 308-09. This Court subsequently upheld the Court of Appeals' ruling in a published order. *See Schmuhl v. Commonwealth*, 298 Va. 131 (2019).

## D. The Habeas Petition

On February 15, 2021, Schmuhl filed a habeas petition alleging that his trial counsel was ineffective with regard to their handling of his defense. Specifically, he claimed that, in light of *Stamper*, his only viable defense was to plead insanity and his trial counsel's failure to raise such a defense rendered their performance deficient. He argued that trial counsel misunderstood the

7

law governing involuntary intoxication and the admissibility of mental state evidence in the absence of an insanity defense. He focused, in part, on language from *Schmuhl I*, stating that trial counsel's position was "unsupported by Virginia precedent." 69 Va. App. at 302. He further claimed he was prejudiced by trial counsel's errors because the exclusion of the mental state evidence effectively deprived him of any viable defense.

As part of his habeas petition, Schmuhl included a declaration from Dr. Murrie stating that he had evaluated Schmuhl and, in his opinion, Schmuhl satisfied *M'Naghten*. Schmuhl also included a declaration from Dr. Ryan stating that she had not been prepared to testify on only the toxicological effects of the various medications that Schmuhl was taking. Dr. Ryan similarly opined that Schmuhl satisfied *M'Naghten* because he was suffering from medication induced delusions at the time of the home invasion.

Additionally, Schmuhl included affidavits from his trial counsel. Elders' affidavit indicated that the medication induced delirium testimony was "critical to Schmuhl's defense," that he and Haywood "believed [they] were right" regarding the admissibility of the evidence, but they "misapprehended the law." Elders further claimed that neither he nor Haywood "th[ought] [they] were rolling the dice with Mr. Schmuhl's defense" and they did not "make a strategic decision to risk" exclusion of the evidence. Haywood declared that he "believed that involuntary intoxication and insanity were distinct [defenses], and that intoxication was not covered by the insanity provisions of the Code." He admitted "that the law was not exactly crystal clear" but he "was convinced [he] was right." Haywood asserted that he "did not make a strategic decision to risk Dr. Ryan's evaluation or opinion being excluded;" rather, he "simply did not believe the law required [trial counsel] to comply with the insanity statutes."

8

The Commonwealth moved to dismiss the habeas petition, arguing that trial counsel made a reasonable strategic decision to pursue involuntary intoxication in the hopes of precluding the Commonwealth from evaluating Schmuhl. Pointing to the extensive research conducted by trial counsel, the Commonwealth insisted that their performance was not deficient. It noted that trial counsel were faced with a choice between "an insanity defense which had a low likelihood of success" and "a defense that had a chance of success if the [trial court] accepted their novel arguments." As the law was not settled with regard to the interaction between insanity and involuntary intoxication at the time of Schmuhl's trial, the Commonwealth took the position that trial counsel could not be faulted for choosing the option which, if successful, would have avoided giving the Commonwealth "early access to Schmuhl's medical records and a counter-evaluation of Schmuhl's sanity." The Commonwealth further contended that Schmuhl was not prejudiced by his trial counsel's performance, as "there is no reasonable probability of [a] different result even if trial counsel had presented an insanity defense."

Schmuhl replied that the Commonwealth (1) had not proffered any evidence refuting his factual allegations and, therefore, he was entitled to an evidentiary hearing; (2) misapprehended the law regarding strategic decisions in deficient-performance analysis; (3) overlooked trial counsel's misreading of *Stamper*; and (4) made unavailing prejudice arguments. Among other flaws, Schmuhl argued the Commonwealth's prejudice arguments relied on speculation that a counter-evaluation by the Commonwealth would have refuted Dr. Ryan's opinions.

After considering the parties' arguments, the habeas court, which was presided over by the same judge who presided over Schmuhl's trial, granted the Commonwealth's motion to dismiss. It denied Schmuhl's request for an evidentiary hearing, finding that the record was sufficient to decide the matter. Regarding trial counsel's performance, the habeas court ruled

9

that it was not deficient because their "approach to the case was neither unreasonable nor indefensible," including the decision not to plead insanity. The habeas court determined that trial counsel's decision not to plead insanity was based on "counsel's comprehensive and deep understanding of prevailing and controlling case law" and reflected "a careful and conscientious weighing of risks and rewards." It noted that, at trial, both the trial court and Commonwealth agreed that, under some circumstances, mental-state evidence can be admissible absent an insanity plea notwithstanding *Stamper*. It further pointed out that the risks of not pleading insanity were mitigated by the fact that Dr. Ryan was able to testify regarding the toxicological effects of Schmuhl's medication, even if the medication induced delirium evidence was excluded. According to the habeas court, the decision not to plead insanity carried four strategic advantages: (1) it avoided a counter-evaluation of Schmuhl's sanity by the Commonwealth; (2) it delayed disclosure of Dr. Ryan's opinions "until nine days into the trial;" (3) it precluded the Commonwealth from "presenting an effective rebuttal expert;" and (4) it avoided the civil commitment attendant to an insanity verdict. The habeas court also concluded that trial counsel's assertion that their approach was not a strategic decision was not dispositive, as their subjective state of mind was not controlling; rather, the dispositive issue was whether trial counsel's conduct was a "reasonable strategic approach under all the circumstances."

With regard to whether Schmuhl was prejudiced by his trial counsel's decision, the habeas court found that the "evidence of [his] guilt was overwhelming and conclusively, irrefutably, negated any claim of insanity, involuntary intoxication, unconsciousness, or 'medication-induced delirium.'" Indeed, the habeas court pointed to 26 pieces of evidence it found "particularly significant" to its finding that the evidence of guilt was overwhelming, which tended to show Schmuhl's planning, as well as his physical and mental dexterity before, during,

10

and after the crimes. It further noted that, had he raised an insanity defense, the Commonwealth would have had increased discovery and Dr. Ryan's testimony would not have gone unrebutted. The habeas court also relied on the fact that the jury had rejected the involuntary intoxication defense as indicating that an insanity defense would not have been successful.

Schmuhl appeals.

## II. ANALYSIS

On appeal, Schmuhl argues that the habeas court erred in denying him an evidentiary hearing on his claim that his trial counsel provided ineffective assistance. He further contends that the habeas court improperly characterized his trial counsel's failure to properly assert an involuntary intoxication defense as a strategic decision. Finally, he insists that the habeas court erred in ruling that his trial counsel's performance was not deficient and that their deficient performance was not prejudicial.

## A. Evidentiary Hearing

Schmuhl first argues that the habeas court erred in denying him an evidentiary hearing to prove that his trial counsel was ineffective due to their mishandling of his involuntary intoxication defense. According to Schmuhl, his trial counsel should have been given the opportunity to explain themselves on the record and the lack of an evidentiary hearing permitted the habeas court to speculate as to the motives behind their decisions. The Commonwealth, on the other hand, contends that an evidentiary hearing was unnecessary because the matter can be fully determined by reviewing the trial record and the affidavits submitted by Schmuhl. We agree with the Commonwealth.

Whether a habeas court erred in refusing to grant an evidentiary hearing on a habeas petition is reviewed for an abuse of discretion. *Oprisko v. Dir. of the Dep't of Corr.*, 293 Va. 87,

11

99 (2017) ("We review a habeas court's decision to deny an evidentiary hearing for an abuse of discretion."). Further, the decision to hold an evidentiary hearing in a habeas proceeding is dependent on the adequacy of the trial record. *Friedline v. Commonwealth*, 265 Va. 273, 277 (2003). "When a trial record provides a sufficient basis to determine the merits of a habeas corpus petition, a circuit court may refuse either party's request for an evidentiary hearing." *Id.*

Schmuhl characterizes his request for an evidentiary hearing as an attempt to address "disputed" facts at issue in his petition. The specific facts that Schmuhl claims are in dispute are "what trial counsel did to prepare the defense, what trial counsel thought, how trial counsel read the law, and why trial counsel made certain decisions." We note, however, that these facts are not in dispute. Indeed, the affidavits filed by Schmuhl's trial counsel addressing these matters were unrebutted by the Commonwealth.

Moreover, it is important to point out that, in their affidavits, Elders and Haywood explained how they prepared for Schmuhl's defense, their belief that involuntary intoxication and insanity were distinct defenses, and their recognition "that the law was not exactly crystal clear" on the matter. In other words, through their affidavits, Elders and Haywood were able to explain the considerations that guided their decision to proceed with an involuntary intoxication defense. Thus, contrary to Schmuhl's assertion on appeal, Elders and Haywood were given the opportunity to explain themselves on the record and, therefore, there was no need for an evidentiary hearing. Indeed, it is telling that Schmuhl has failed to identify any additional information that might have been adduced in an evidentiary hearing that was not duplicative of the evidence already in the record or presented via the affidavits. Accordingly, the habeas court did not abuse its discretion by refusing Schmuhl's request for an evidentiary hearing that would serve no purpose other than to act as a vehicle to present duplicative evidence.

B. Ineffective Assistance of Counsel

Whether a defendant "is entitled to habeas relief is a mixed question of law and fact, which we review de novo." *Dominguez v. Pruett*, 287 Va. 434, 440 (2014). In conducting such a review, the habeas court's findings of fact "are entitled to deference and are binding upon this Court unless those findings are plainly wrong or without evidence to support them." *Id.* (internal quotation marks and citation omitted). "However, the court's legal conclusions are reviewed de novo." *Fuentes v. Clarke*, 290 Va. 432, 438 (2015).

"To prevail on an ineffective assistance of counsel claim, the petition must satisfy both the 'performance' prong and the 'prejudice' prong of the *Strickland* test." *Zemene v. Clarke*, 289 Va. 303, 313 (2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance prong requires that a defendant "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A defendant must prevail on both prongs to establish that counsel's performance was ineffective. *Dominguez*, 287 Va. at 440. In the present case, the habeas court ruled that Schmuhl failed to meet his burden as to either prong. Accordingly, if we affirm the habeas court's ruling on either prong, Schmuhl's ineffective assistance claim fails. *See, e.g.*, *Shaikh v. Johnson*, 276 Va. 537, 544 (2008) ("It is not necessary for a court deciding an ineffective assistance [of counsel] claim to address both components of the [*Strickland*] inquiry, or to address them in any particular order. If the petitioner makes an insufficient showing on either component of the test, the other need not be considered.") (citing *Strickland*, 466 U.S. at 697 and *Johnson v. Tice*, 275 Va. 18, 28 (2008)).

Schmuhl first argues that the habeas court erred in concluding that his trial counsel's performance was not deficient. According to Schmuhl, his trial counsel were deficient because they misread and misapplied the law, which resulted in his inability to raise an insanity defense and denied him the ability to present powerful evidence. Schmuhl contends that it was unreasonable for his trial counsel to believe that an involuntary intoxication defense did not require compliance with the insanity statutes. He insists that involuntary intoxication is a form of insanity and points out that the specific intoxication that Schmuhl claims he was suffering from – medication induced delirium – met the diagnostic criteria of a diagnosable mental condition. Schmuhl posits that reasonable counsel would have erred on the side of caution and fulfilled the requirements for raising an insanity defense just to make sure the evidence of his mental state was not excluded. We disagree.

As previously noted, to demonstrate that his trial counsel's performance was deficient, Schmuhl was required to establish that their "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To make the requisite showing, Schmuhl was first required to "identify the acts or omissions of counsel" that he claims were not the "the result of reasonable professional judgment." *Id.* at 690. It then falls on the reviewing court to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* Furthermore,

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-guess
> counsel's assistance after conviction or adverse sentence, and it is
> all too easy for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or omission
> of counsel was unreasonable. A fair assessment of attorney
> performance requires that every effort be made to eliminate the
> distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time. Because of the difficulties

14

> inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal quotation marks and citations omitted).

Here, Schmuhl insists that the record conclusively establishes that his trial counsel were ignorant of or misread our decision in *Stamper* and, therefore, their performance was, by definition, unreasonable.[2] Specifically, Schmuhl contends that this Court's holding in *Stamper* stating that "evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt," 228 Va. at 717, unambiguously established that his trial counsel's reliance on involuntary intoxication and/or unconsciousness to negate *mens rea* was doomed to fail. According to Schmuhl, by fixating on this strategy to the exclusion of the more viable insanity defense, his trial counsel's performance was not objectively reasonable.

Schmuhl is correct that, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014). However, he fails to consider that a distinction exists between a losing argument based on ignorance of a fundamental point of law and a losing argument that attempts to logically

---

[2] We recognize that Schmuhl also challenges the nature of his trial counsel's approach to his defense, specifically, whether or not it was the result of a strategic decision. However, we need not reach that issue, because "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). Accordingly, our focus is on the objective reasonableness of the defense raised by Schmuhl's trial counsel; we make no decision regarding whether that defense was the result of a strategic decision.

extend the existing law. Whereas the former is the "quintessential example of unreasonable performance under *Strickland*," *id.*, the latter is an objectively reasonable risk inherent in the practice of law.

A review of the facts in this case demonstrates that trial counsel were not ignorant of the import of *Stamper*. At all relevant points in this case, it was evident that Schmuhl's trial counsel were aware of *Stamper*, as the record is replete with numerous instances where they specifically referenced *Stamper*, and they attempted to distinguish that decision. The habeas court's description of trial counsel's knowledge is particularly apt: "trial counsel were intimately familiar with *Stamper* and the Virginia cases that preceded and followed *Stamper*."[3]

Moreover, contrary to Schmuhl's argument here, it was not so apparent at the time trial counsel raised their arguments that *Stamper* effectively negated an involuntary intoxication or unconsciousness defense. Indeed, at that time, the interplay between *Stamper* and the defenses of involuntary intoxication or unconsciousness was not particularly well developed. As the habeas court recognized, "*Stamper* was not an involuntary intoxication or unconsciousness case and did not explicitly address the issue of whether expert mental health testimony could be offered to address the discrete issue of the impact of intoxicants on an individual's mental state." A review of the relevant cases conclusively demonstrates this fact.

In 1923, this Court recognized that the defense of involuntary intoxication exempts an individual from punishment. *Johnson v. Commonwealth*, 135 Va. 524, 534 (1923). To reach this conclusion, the Court began by holding "that voluntary drunkenness (as distinguished from

---

[3] As the judge presiding over the habeas court was the same judge who presided over Schmuhl's trial, he was ideally situated to assess trial counsel's awareness of *Stamper*. *See Schriro v. Landrigan*, 550 U.S. 465, 476 (2007) (noting that, where the judge presiding over a postconviction proceeding is the same as the judge that presided over the trial, that judge is "ideally situated" to address contested points of fact).

settled insanity produced by drink) affords no excuse for crime, save only that where premeditation is a material question the intoxication of the accused may be considered by the jury." *Id.* at 529. The Court went on to explain that "[i]n cases of involuntary drunkenness the law properly recognizes an exception to the general rule above discussed." *Id.* at 533. Although the Court equated the level of responsibility of an involuntarily intoxicated individual to that of an individual deemed insane, nothing in the opinion can be read as stating that the two defenses are the same.

Almost 50 years later, we recognized the defense of unconsciousness. In *Greenfield v. Commonwealth*, the Court defined "unconsciousness" as "a state of mind of persons of sound mind suffering from some voluntary or involuntary agency rendering them unaware of their acts." 214 Va. 710, 714 (1974). "Where not self-induced, unconsciousness is a complete defense to a criminal homicide," whereas "self-induced unconsciousness goes only to the grade of the offense and not to the existence of a complete defense." *Id.* In reaching this conclusion, the Court relied on *State v. Mercer*, 165 S.E.2d 328 (N.C. 1969), where the Supreme Court of North Carolina clearly indicated that an unconsciousness defense based on the involuntary consumption of intoxicants was wholly different from an insanity defense.

> "Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime.
>
> *This rule of law does not apply to a case in which the mental state of the person in question is due to insanity, mental defect or voluntary intoxication resulting from the use of drugs or intoxicating liquor, but applies only to cases of the unconsciousness of persons of sound mind* as, for example, somnambulists or persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind and the person's acts are controlled solely by the subconscious mind."

17

*Id.* at 335-36 (quoting *People v. Wilson*, 427 P.2d 820, 825 n.2 (Cal. 1967)) (emphasis added).[4]

*Stamper*, which was decided 11 years after *Greenfield* and 70 years after *Johnson*, involved a defendant who sought to introduce evidence of his mental state that was "short of insanity." 228 Va. at 716. Specifically, the defendant sought to introduce evidence of his diminished capacity because he claimed such evidence "was relevant to the determination whether he was capable of entertaining the specific intent required for conviction." *Id.* After discussing "[t]he state of knowledge in the fields of medicine and psychiatry," the Court explicitly rejected the diminished capacity defense and ruled that, "[u]nless an accused contends that he was beyond that borderline when he acted, his mental state is immaterial to the issue of *specific intent.*" *Id.* at 717 (emphasis added). It was in this context that the Court went on to state "that evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt." *Id.*

Interestingly, in the years following our decision in *Stamper*, neither this Court nor the Court of Appeals relied upon it for the broad notion that *all* evidence related to a defendant's mental state is barred in the absence of an insanity defense. Instead, *Stamper* was generally cited as a rejection of the diminished capacity defense. *See, e.g.*, *Smith v. Commonwealth*, 239 Va.

---

[4] Although involuntary intoxication was not directly discussed in *Greenfield*, the similarities between that defense and non-self-induced unconsciousness cannot be overlooked. Both defenses absolve a defendant of any criminal responsibility for their actions, provided that they were involuntarily rendered intoxicated or unconscious. Moreover, both defenses are distinguishable from an insanity defense by the fact that they both involve an individual with an otherwise sound mind who, through the introduction of some involuntary agency, is unaware of his actions; an insanity defense, on the other hand, involves neither sound mind nor involuntary agency. Rather, an individual is deemed insane in the eyes of the law if they are "labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing[,] or, if he did know it, that he did not know he was doing what was wrong." *Price v. Commonwealth*, 228 Va. 452, 457 (1984) (quoting *M'Naghten's Case*, 8 Eng. Rep. 718, 722-23 (1843)).

243, 259-60 (1990). Prior to *Schmuhl I*, the most expansive interpretation was in *Peeples v. Commonwealth*, 30 Va. App. 626, 633 (1999), where the Court of Appeals explained:

> The principle enunciated in *Stamper* resists turning to the evolving field of psychiatry when determining individual criminal responsibility. The Court would not take the determination of criminal responsibility from a stable and constant standard established by common law and place it under the discipline of psychiatry. The Court in *Stamper* focused on the unsuitability of psychiatry for determining criminal responsibility in the absence of an insanity defense.

However, it is important to note that the Court of Appeals did not conclude that a defendant's mental state was irrelevant in the absence of an insanity defense. To the contrary, it expressly limited its holding, stating "*[i]n this instance*, the expert's opinion evidence was not relevant to prove that the defendant acted to defend himself from a threat of imminent bodily harm, or that he was provoked or acted in the heat of passion." *Id.* at 634 (emphasis added). The Court of Appeals further clarified that it was *not* saying that such evidence "is never admissible" to support certain affirmative defenses. *Id.*

Twenty-four years after *Stamper* was decided, we revisited the involuntary intoxication/unconsciousness defense discussed in *Johnson* and *Greenfield*. In *Riley v. Commonwealth*, the defendant asserted at trial that he was not guilty of maiming because he was sleepwalking (i.e., unconscious) due to involuntary intoxication caused by the interaction of various medications he had taken. 277 Va. 467, 474-75 (2009). Notably, the defendant did not raise an insanity defense. The trial court rejected the defendant's defense of unconsciousness due to involuntary intoxication and found him guilty. *Id.* at 477. On appeal, we ruled that the defendant failed to present evidence proving "that he was in fact sleepwalking." *Id.* at 480. Interestingly, in framing the issue on appeal, the Court stated, "[w]hen asserting an affirmative defense, such as *insanity, self-defense, or unconsciousness*, the burden is on the defendant to

19

present evidence establishing such defense to the satisfaction of the fact finder." *Id.* at 479 (emphasis added). This language could reasonably be interpreted as tacit recognition that an involuntary intoxication/unconsciousness defense is a distinctly separate defense from an insanity defense.[5]

Once we follow the United Stated Supreme Court's admonishment to make "[a] fair assessment of attorney performance" by removing "the distorting effects of hindsight," reconstructing "the circumstances of counsel's challenged conduct," and evaluating "the conduct from counsel's perspective at the time" of Schmuhl's trial, it is apparent that Schmuhl has failed to overcome the strong presumption that his trial counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As indicated above, the state of the law regarding the interplay between *Stamper* and the defenses of involuntary intoxication and unconsciousness was not well established at the time of Schmuhl's trial.[6] Indeed, it was not until we affirmed the Court of Appeals' decision in *Schmuhl I*, that this matter was fully decided. As such, we cannot say that it was unreasonable for trial counsel to argue that involuntary

---

[5] Indeed, it is telling that, during the November 30, 2015 hearing, the Commonwealth agreed with Schmuhl's trial counsel that involuntary intoxication and insanity were distinctly separate defenses.

[6] Although Schmuhl points to *Morgan v. Commonwealth*, 50 Va. App. 120 (2007) for the notion that involuntary intoxication had been recognized as a form of insanity, it is apparent that he is reading too much into the Court of Appeals' opinion. *Morgan* involved a question regarding the burden of proof when a defendant raises an "insanity defense of involuntary intoxication." 50 Va. App. at 133. In other words, the Court of Appeals was not deciding whether involuntary intoxication was a form of insanity defense; rather, it was deciding who bore the burden when the defendant chose to assert that they were insane as a result of involuntary intoxication. Thus, the case does not stand for the proposition that an involuntary intoxication defense is the same as an insanity defense. At best, *Morgan* can be interpreted as tacit recognition that there is some overlap in the defenses.

intoxication or unconsciousness were separate defenses from insanity and, therefore, that *Stamper* did not apply.

We also cannot ignore the potential benefits of trial counsel's approach. Had they succeeded, it would have benefitted Schmuhl immensely. As the habeas court pointed out, by avoiding an insanity defense, trial counsel garnered a significant strategic advantage by depriving the Commonwealth of the ability to have its expert evaluate Schmuhl, limiting the Commonwealth's ability to rebut Dr. Ryan's testimony, and, if the defense was successful, ensuring that Schmuhl "would not be subject to the panoply of rules and regulations governing a Not Guilty By Reason of Insanity acquittee."

Taken as a whole, it is apparent that trial counsel's actions in this case amounted to an unsuccessful attempt to extend the existing law to their client's benefit.[7] The record clearly establishes that Schmuhl's trial counsel made a thorough investigation of the law and facts and, based on that investigation, they chose a course of action that they believed had the best chance of success.[8] This is precisely the type of representation that is expected from competent attorneys. Accordingly, we cannot say that Schmuhl's trial counsel's performance was deficient.

---

[7] It is readily apparent that trial counsel were, essentially, attempting to take advantage of a perceived loophole in the law. Notably, at the November 30, 2015 hearing, while arguing that involuntary intoxication and insanity were separate, trial counsel pointed out that "the law is a little unclear in Virginia on this topic." They then went on to state that "the end game of this, of [an] involuntary intoxication defense, if we win, my understanding is that Mr. Schmuhl will walk free, he would have no further obligation to the court, he would not be civilly committed."

[8] It is further worth noting that, if we were to rule that trial counsel's performance was deficient in this case, it would set a precedent under which any unsuccessful defense involving a novel legal argument in a difficult case would be grounds for habeas relief. As the United States Supreme Court explained, such a result is untenable.

> The availability of intrusive post-trial inquiry into attorney
> performance or of detailed guidelines for its evaluation would
> encourage the proliferation of ineffectiveness challenges. Criminal

## III. CONCLUSION

Having determined that Schmuhl failed to establish that his trial counsel's performance was deficient as measured under the *Strickland* test, Schmuhl's claim of ineffective assistance of counsel fails. Accordingly, we will affirm the judgment of the habeas court.

*Affirmed.*

---

trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

*Strickland*, 466 U.S. at 690.